■ RICHARD J. ABAR, SR., et al., Respondents-Appellants, v FREIGHTLINER CORPORATION, Defendant and Third-Party Plaintiff-Appellant-Respondent. WALSH TRUCKING SERVICE, INC., Third-Party Defendant-Respondent. [617 NYS2d 209] — White, J. (1) Appeal from a judgment of the Supreme Court (Duskas, J.), entered May 19, 1993 in St. Lawrence County, which granted third-party defendant's motion for summary judgment dismissing the third-party complaint, and (2) cross appeals from a judgment of said court, entered July 22, 1993 in St. Lawrence County, upon a verdict rendered in favor of plaintiffs.

On April 7, 1986, as plaintiff Richard J. Abar, Sr. (hereinafter Abar) was entering the cab of his truck that was designed and manufactured by defendant in 1976, several parts of the grab rail assembly that he was using to hoist himself up gave way, causing him to fall and sustain serious back injuries. Thereafter, Abar and his wife commenced this strict products liability action against defendant which, in turn, initiated a third-party action against Abar's employer, Walsh Trucking Service, Inc. (hereinafter Walsh), for indemnification or contribution. At the conclusion of the trial, Supreme Court dismissed the third-party action and the jury returned a verdict in plaintiffs' favor, awarding Abar $400,000 and his wife $100,000 on her derivative claim. Following Supreme Court's reduction of Abar's award to $280,265.52 pursuant to CPLR 4545 (c), these appeals ensued.

A grab rail assembly is comprised of a 20-inch tube attached

to upper and lower brackets by fastening devices. Each bracket is fastened to the cab of the truck with two bolts. Abar's accident allegedly occurred when the lower bracket gave way and the tube came out of the upper bracket, leaving Abar with nothing to hold onto. Plaintiffs' expert opined that the lower bracket gave way because the bolts used to attach it to the cab were inadequate.

One of defendant's arguments on this appeal is that plaintiffs' action should have been dismissed due to their failure to prove that the bolts that failed were the ones it installed when it manufactured the truck. It is undisputed that the lower bracket which plaintiffs' expert inspected was not the original bracket installed by defendant. This, however, is not fatal to plaintiffs' action since " 'the existence of a product defect as well as the identity of the manufacturer of the product are issues of fact capable of proof by circumstantial evidence' " (Treston v Allegretta, 181 AD2d 470, 471, quoting Otis v Bausch & Lomb, 143 AD2d 649, 650).

Here, a mechanic for Walsh testified that, after Abar's accident, he obtained a replacement tube and lower bracket from an identical truck of defendant and, because the lower bracket's bolts were broken off, he drilled two holes in the cab for the placement of new bolts. When plaintiffs' expert removed the lower bracket, in addition to the two holes drilled by Walsh's mechanic, there were two holes with broken bolts in them. He concluded that these broken bolts were the original ones since there is generally no reason to replace such bolts. He further opined that if the original bolts had previously failed, it would have been necessary to drill new holes because it is extremely difficult to extricate broken bolts. In our view this evidence, along with the absence of definitive proof that the grab rail assembly had been altered prior to Abar's accident, provided sufficient evidence for the jury to conclude that the bolts that failed were the ones installed by defendant.

At trial, defendant's expert stated that the tube was secured to the upper bracket by a roll pin instead of nonstructural rivets as plaintiffs maintained. Even if true, this fact did not require a dismissal of this action since the jury could conclude that defendant's design of the grab bar assembly was defective based on plaintiffs' expert's opinion that the use of a roll pin was insufficient as it could not sustain the load placed upon it should the lower bracket fail.

Defendant next argues that the verdict should have been set

aside due to plaintiffs' failure to establish a prima facie case. To establish such a case in a strict products liability action predicated upon design defects, "a plaintiff must show that the manufacturer marketed a product which was not reasonably safe in its design, that it was feasible to design the product in a safer manner and that the defective design was a substantial factor in causing the plaintiff's injury" *(De Matteo v Big V Supermarkets,* 204 AD2d 932, 933).

Plaintiffs' proof indicated that defendant's design of the grab bar assembly was not reasonably safe because the use of two 1-inch by 1/4-inch bolts to attach the brackets to the cab of the truck was inadequate due to the fact that they would corrode and weaken prior to the termination of the truck's useful life. He further opined that the use of nonstructural rivets or a roll pin to secure the tube to the upper bracket was a dangerous design since neither device could sustain the load placed upon it should the lower bracket fail. He went on to state that these problems could have been corrected by technologies that were available in 1976 that would have only added two to three dollars to the cost of manufacturing the grab bar assembly. In his opinion, these design defects were the proximate cause of Abar's accident. In our view, this proof sufficiently established a prima facie case.

Contrary to defendant's assertion, we conclude that the verdict should not be set aside as against the weight of the evidence. As in most strict products liability cases, the trial herein was essentially a battle of experts. As we accord due deference to the jury's resolution of the experts' conflicting testimony based upon its opportunity to observe and hear the witnesses and weigh their testimony, we cannot say that the jury could not have reached its verdict by any fair interpretation of the evidence *(see, Wierzbicki v Kristel,* 192 AD2d 906).

Although plaintiffs' expert observed the broken bolts, he neither removed them nor, according to defendant, preserved them as evidence. Consequently, defendant claims that Supreme Court erred in not acceding to its requests to strike the testimony of plaintiffs' expert or, alternatively, to provide the jury with a spoliation charge.

Spoliation sanctions are appropriate where a litigant, intentionally or negligently, disposes of crucial items of evidence involved in an accident before his or her adversary had an opportunity to inspect them *(see,* Hoenig, Products Liability, NYLJ, Aug. 8, 1994, at 3, col 1). Such sanctions have been applied where the plaintiffs had portions of the defective product in their possession, but lost them prior to allowing the

defendant to inspect them (see, Roselli v General Elec. Co., 410 Pa Super 223, 599 A2d 685) and where plaintiffs had possession of the product and allowed it to be destroyed after their expert inspected it (see, Schwartz v Subaru of Am., 851 F Supp 191). This case is distinguishable in that plaintiffs never had possession of the truck or the bolts. Further, according to plaintiffs' expert, it appears that it would have been extremely difficult to remove the bolts from the truck. Also, there is no evidence that plaintiffs' attorneys intentionally misled defendant's attorneys by indicating that they had possession of the broken bolts when, in fact, they did not. Therefore, under these circumstances, Supreme Court did not abuse its discretion in denying defendant's request (compare, Brown v Michelin Tire Corp., 204 AD2d 255).

Defendant raises the further argument that Supreme Court erred in dismissing its third-party complaint at the close of the evidence. It is well established that, before a complaint may be dismissed at the close of evidence, "there must be no rational basis upon which the jury might find in favor of the plaintiff" (Donohue v Losito, 141 AD2d 691, lv denied 72 NY2d 810). Applying this standard here, we find the dismissal of the third-party complaint was warranted since defendant presented no direct or indirect proof that Walsh received any instructions or warnings on maintenance of the grab bar assembly, that it altered the design of the assembly, or failed to maintain or inspect it. In short, aside from some speculative evidence, there was no showing that Walsh contributed to Abar's accident in any manner.

Both parties challenge various aspects of the jury's award of damages to Abar as well as Supreme Court's reduction of those damages pursuant to CPLR 4545 (c). In assessing the challenge to the jury's award, we give great deference to its interpretation of the evidence and will set aside an award of damages only when it deviates materially from what would be reasonable compensation under the circumstances (see, Raucci v City School Dist., 203 AD2d 714, 716).

Initially, Abar contends that the jury erred in failing to award him damages for future pain and suffering. We see no reason to disturb this aspect of the jury's award in light of the testimony of Abar's physician that Abar made a good recovery from the operative procedure he underwent, and only experiences pain and discomfort when he rides in an automobile. Moreover, there was evidence from which the jury could infer that Abar's discomfort could be attributed to causes unrelated to the subject accident.

We agree with defendant that the jury's award for past lost earnings must be reduced by $47,368.89 in view of Abar's admission that some of his fringe benefits were counted twice in calculating his past lost earnings.

CPLR 4545 (c) provides that in a personal injury action, if the court finds that past or future expenses, such as lost earnings, were replaced or indemnified, in whole or in part, from any collateral source, it shall reduce the amount of the award for economic losses by the amount of the collateral source. A collateral source is defined "as insurance * * * social security * * * workers' compensation or employee benefit programs" (CPLR 4545 [c]).

Here, Supreme Court reduced the jury's award for past lost earnings by $60,324.48. This was a lump-sum payment received by Abar in October 1992 from the New York State Teamsters Conference Pension and Retirement Fund representing retroactive disability pension payments from November 1986 through October 31, 1992. Plaintiffs maintain that Supreme Court should not have deducted this sum since it constituted a pension benefit which is not considered a collateral source for the reason that a pension does not in any way replace or indemnify past earnings.

We need not decide the issue of whether a retirement pension is a collateral source within the ambit of CPLR 4545 (c) since our review of Abar's pension and benefit plan leads us to conclude that the payment he received was a collateral source as it "replaced or indemnified" Abar's past lost earnings. Our conclusion rests on the fact that Abar would not have received this payment unless he was unable to work and was the recipient of a Social Security disability pension. Further, no additional contributions were required to be made to the plan on Abar's behalf for him to receive the benefit payment which did not reduce the amount of his retirement pension. Thus, Supreme Court's deduction of this sum from the jury's award of past lost earnings was proper.

Inasmuch as the jury calculated Abar's lost earnings to the date of the verdict (May 17, 1993), Supreme Court should also have deducted the $5,864.88 in disability pension benefits Abar received from November 1992 to the date of the verdict and the $4,507 in Social Security retirement benefits he received from January 1, 1993 to the date of the verdict.

Cardona, P. J., Casey and Peters, JJ., concur. Ordered that the judgment entered May 19, 1993 is affirmed, without costs. Ordered that the judgment entered July 22, 1993 is modified,

on the law, without costs, by reducing the award to plaintiff Richard J. Abar, Sr. by $47,368.89 in overstated lost earnings and by $10,371.88 in collateral source payments, and, as so modified, affirmed.