[666 NYS2d 609]

Timothy Kirkland et al., Respondents, v New York City Housing Authority et al., Respondents. New York City Housing Authority, Third-Party Plaintiff-Respondent, v V. C. Vitanza Sons, Inc., Third-Party Defendant-Appellant.

First Department, December 23, 1997

### APPEARANCES OF COUNSEL

*Kevin J. Spencer* of counsel, New York City *(Abrams & Martin, P. C.,* attorneys), for third-party defendant-appellant.

*Miriam Skolnik* of counsel, New York City *(Herbert Rubin, David B. Hamm* and *Linda M. Brown* on the brief; *Herzfeld & Rubin, P. C.,* attorneys), for New York City Housing Authority, respondent and third-party plaintiff-respondent.

*Michael Conforti* of counsel, New York City *(Leahey & Johnson, P. C.,* attorneys), for J.B. Slattery & Bro., Inc., respondent.

### OPINION OF THE COURT

Tom, J.

This is a wrongful death action brought on behalf of Brenda Lee Moore by her husband, Timothy Kirkland, and her mother, Katherine Moore.

At the time of this incident, decedent Moore lived with her parents at 2955 Eighth Avenue, apartment 20F, in Manhattan, which is part of the Polo Grounds Towers Houses, a housing project owned and operated by the New York City Housing Authority (NYCHA). Decedent's death on October 15, 1984 resulted from a fiery fall through an apartment window to the street below. When police responded, decedent's mother indicated that decedent had had an extensive history of severe psychiatric problems, and that after she had set herself on fire with a newspaper, she jumped out of the bedroom window. Police recovered a partially burned, rolled-up newspaper on the kitchen floor and a shred of decedent's burned blouse on the window sill. The Medical Examiner, on the basis of the autopsy, determined that the death had been a suicide.

However, in commencing the action in February 1986, plaintiffs alleged that decedent had been trying to light a stove in the apartment to cook breakfast, that the stove was defec-

tive, that her clothes caught fire when accumulated gas ignited and that as she ran, in flames, through the apartment, she fell out of the window.

Plaintiffs sued the NYCHA, as owner and operator of the apartment complex, and defendant J.B. Slattery & Bro., the manufacturer of the stove. This stove apparently was installed during the summer of 1984 as part of a project by NYCHA to replace all stoves in the 1,614-unit housing complex. Six years after plaintiffs filed suit, in July 1992, NYCHA commenced this third-party action on a theory of defective installation against third-party defendant V. C. Vitanza Sons, Inc. (Vitanza), which had installed gas connectors between the gas lines and the new stoves in a number of the apartments for this project.

After commencement of the main action, a 1986 order of New York County Supreme Court (George Bundy Smith, J.) directed that defendants be provided an opportunity to inspect the stove. NYCHA never inspected this evidence. Plaintiffs retained an expert, now deceased, to inspect the stove, who photographed it and wrote a report. In 1991, Mrs. Moore requested NYCHA as landlord to remove the stove, which was done. For all practical purposes, the allegedly defective stove thereafter was destroyed. During the following year, NYCHA commenced the third-party action against Vitanza.

In moving to dismiss the third-party complaint for defendant's failure to preserve evidence, Vitanza noted that it had not installed all of the gas connections in the complex; that it had no way of determining whether it had installed the stove in issue; that NYCHA itself had installed those gas connections to which Vitanza had not been provided access; that NYCHA inspected those that Vitanza had installed; that no problems had been identified at the time of the installations and no such subsequent notice of defect had been given with respect to the installation of any stove in the complex. Vitanza maintained that its ability to inspect the stove was critical to its defense and that the destruction of the evidence was so prejudicial that the third-party complaint required dismissal.

NYCHA argued, in opposition, that dismissal of the third-party action was too severe and would be improper because it had not been responsible for the loss of the stove: the Moores had requested the stove be removed and replaced with one they had purchased.

In denying Vitanza's motion, the court initially concluded that the third-party defendant had had the opportunity to

inspect the stove by virtue of the 1986 order but had failed to avail itself of that opportunity. When apprised that Vitanza had not been impleaded until 1992, the court noted the correction. However, the court concluded that the stove had not been destroyed in bad faith, and, while conceding that Vitanza effectively had been deprived of an opportunity to inspect the stove, the court nevertheless found the remedy of dismissal of the third-party complaint to be too extreme. We agree with third-party defendant that through no fault of its own, it has been deprived of an ability to present a defense. Accordingly, we reverse the order on appeal and dismiss the third-party complaint.

Spoliation is the destruction of evidence. Although originally defined as the intentional destruction of evidence arising out of a party's bad faith, the law concerning spoliation has been extended to the nonintentional destruction of evidence (*e.g.*, *Abar v Freightliner Corp.*, 208 AD2d 999; *see generally,* Hoenig, *Spoliation of Evidence: Preserving the Crown Jewels,* NYLJ, Dec. 23, 1988, at 3, col 1, and citations therein). A correlating trend toward expansion of sanctions for the inadvertent loss of evidence recognizes that such physical evidence often is the most eloquent impartial "witness" to what really occurred, and further recognizes the resulting unfairness inherent in allowing a party to destroy evidence and then to benefit from that conduct or omission (Hoenig, *id.*). The trend is particularly pronounced in litigation involving products liability, but also is found in negligence cases.

Under New York law, spoliation sanctions are appropriate where a litigant, intentionally or negligently, disposes of crucial items of evidence involved in an accident before the adversary has an opportunity to inspect them (*cf., Abar v Freightliner Corp., supra*). We have found dismissal to be a viable remedy for loss of a "key piece of evidence" that thereby precludes inspection (*Mudge, Rose, Guthrie, Alexander & Ferdon v Penguin Air Conditioning Corp.*, 221 AD2d 243).

In the case at bar, while the evidence does not show the spoliation to be intentional, it clearly supports a finding that crucial evidence was negligently destroyed. NYCHA's argument that it should not be held responsible for the loss of the stove since its removal was requested by the Moores is unpersuasive. It was NYCHA's employees who actually removed the stove from the apartment and failed to preserve it. Although affidavits from NYCHA employees in the building complex indicate that the employees authorizing and participating in

the removal of the stove had not known about the litigation, there is no indication in the record that NYCHA, as defendant, had taken any steps to assure preservation of the evidence. NYCHA is estopped from disclaiming responsibility for the loss of the stove since it maintained records for the apartments, and was aware of the pending litigation with these tenants and the importance of this piece of evidence. It is undisputed that the stove was within NYCHA's possession when it was disposed of.

Nor do we find the dismissal of the third-party action to be inappropriate or too harsh under the circumstances of this case. Commentary suggests that personal injury specialists, defense as well as plaintiff, almost uniformly recognize the elevated priority of preserving the evidence, so that drastic sanctions are not necessarily unduly harsh sanctions when a critical item of evidence is not preserved (Hoenig, Products Liability, *Spoliation of the 'Crown Jewels': An Update,* NYLJ, Mar. 11, 1991, at 3, col 1; Hoenig, Products Liability, *Spoliation Update;* 'Reasonable' Expert Fee, NYLJ, Apr. 13, 1992, at 3, col 1). Some States even recognize a tort of intentional as well as negligent spoliation, underscoring the seriousness with which it is treated (*see, e.g., Continental Ins. Co. v Herman,* 576 So 2d 313 [Fla Dist Ct App 1991], and citation therein). Rather, our dismissal is consistent with case law in other jurisdictions. Although dismissal is the most severe sanction and precludes adjudication on the merits, "[t]he stark result is that relevant evidence was irreparably lost by the actions" of the party basing a claim on that evidence (*Capitol Chevrolet v Smedley,* 614 So 2d 439, 443 [Ala Sup Ct 1993]). There is a view that destruction or loss of evidence should be "rendered costly enough an enterprise that it will not be undertaken" (Sempert, *Remedies for Spoliation of Evidence in Product Liability Litigation,* 19 Prod Safety & Liab Rep [BNA] [No. 21] 618 [May 24, 1991]) inasmuch as it "often leaves the offended party prejudicially bereft of appropriate means to confront a claim with incisive evidence and turns trials into speculative spectacles based on rank 'swearing contests'." (Hoenig, Products Liability, *Impeachment Exception; Spoliation Update,* NYLJ, Apr. 12, 1993, at 6, col 5).

Other jurisdictions have found dismissal warranted when discovery orders were not violated, and even when the evidence was destroyed prior to the action being filed (*see, e.g., Stubli v Big D Intl. Trucks,* 107 Nev 309, 314, 810 P2d 785, 788 [Sup Ct 1991]; *Graves v Daley,* 172 Ill App 3d 35, 38, 526 NE2d

679, 681 [App Ct 1988]; *Capitol Chevrolet v Smedley, supra*), notwithstanding that the destruction was not malicious (*Cincinnati Ins. Co. v Synergy Gas*, 585 So 2d 822, 827 [Ala Sup Ct 1991]) or in bad faith (*Thiele v Oddy's Auto & Mar.*, 906 F Supp 158 [WD NY 1995]), points which bear on the case under review. Appellate courts have been rejecting an earlier view equating "fault" in connection with the nonpreservation of evidence with willfulness or bad faith, and evaluating the reasonableness of the nonpreserving party's conduct (*Langley v Union Elec. Co.*, 107 F3d 510 [7th Cir 1997]). Many of these jurisdictions have concluded that plaintiffs should be deemed to know that potential defendants will want to inspect the device alleged to have caused the injury (*Capitol Chevrolet v Smedley, supra*; *American Family Ins. Co. v Village Pontiac GMC*, 223 Ill App 3d 624, 585 NE2d 1115 [App Ct, 2d Dist 1992]). After all, the importance of the device allegedly causing the injury as a physical item of evidence is critical: "the physical items themselves, in the precise condition they were in immediately after an accident, may be far more instructive and persuasive to a jury than oral or photographic descriptions" (*Nally v Volkswagen of Am.*, 405 Mass 191, 198, 539 NE2d 1017, 1021 [1989]).

In this case, we need not decide the relative fault of plaintiff or NYCHA with respect to removal and disposal of the stove; as to Vitanza, who was not even a party to the action at the time of the destruction of the evidence, there was no fault. Under analogous circumstances, we have found that since no act or omission of the party was involved in loss of the evidence and its unavailability for critical examination and analysis, the spoliation was inexcusable to the extent that it prejudiced that party and dismissal was warranted as "a matter of elementary fairness" (*Healey v Firestone Tire & Rubber Co.*, 212 AD2d 351, 352, *revd* 87 NY2d 596 [dismissing manufacturing defect claim]). It is undisputed that for Vitanza, the stove is the key evidence. Its loss "irrevocably stripped" Vitanza, as a later-impleaded third-party defendant, of useful defenses and exposed Vitanza to "extreme prejudice" (*Perez v Rondon*, NYLJ, Mar. 28, 1995, at 26, cols 2, 3 [Sup Ct, NY County 1995]). Unlike an action predicated on a defective product design, such as that against defendant Slattery, where the design possibly might be evaluated and the defect proved circumstantially (*Treston v Allegretta*, 181 AD2d 470; *Strelov v Hertz Corp.*, 171 AD2d 420), the issue whether Vitanza was negligent in installing a gas connection cannot be determined

without an actual inspection of that connection in context with the stove (*see also*, *Dickey v Alcoa S. S. Co.*, 641 F2d 81).

Nor is this result inequitable to NYCHA, which had failed to avail itself of an opportunity to inspect the stove for six years after commencement of the action against it, and was responsible, even if negligently rather than intentionally, for the physical removal and disposal of the stove prior to commencement of the third-party action. Although we do not minimize the evidentiary task faced by NYCHA as against plaintiff, this was a problem of its own making; the fact of its difficulty ought not be employed to unfairly compel a party, which was not even a party at the time crucial evidence was lost, to defend an action when such loss has fatally compromised its ability to defend.

By finding that the sanction of dismissal in favor of the third-party defendant was too extreme under these circumstances, the motion court erred.

Accordingly, the order of Supreme Court, New York County (Leland DeGrasse, J.), entered on or about June 10, 1996, denying third-party defendant's motion for summary judgment dismissing the third-party complaint, should be reversed, on the law, without costs, the motion granted, and the third-party complaint dismissed. The Clerk is directed to enter judgment in favor of third-party defendant-appellant dismissing the third-party complaint as against it.

MURPHY, P. J., ROSENBERGER, ELLERIN and RUBIN, JJ., concur.

Order, Supreme Court, New York County, entered on or about June 10, 1996, reversed, on the law, without costs, the motion to dismiss the third-party complaint granted, and the third-party complaint dismissed.