Shea v Spellman (2004 NY Slip Op 50785(U))

[*1]

Shea v Spellman

2004 NY Slip Op 50785(U)

Decided on July 8, 2004

Supreme Court, Bronx County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 8, 2004

Supreme Court, Bronx County
MARY SHEA,Plaintiff,
against
DEAN SPELLMAN, D.P.M., BERDJ H. STEPANIAN, D.P.M., NEW YORK FOOTCARE, P.C., MIDDLETOWN PODIATRY ASSOCIATES, OUR LADY OF MERCY MEDICAL CENTER.,Defendants.
13676/00

Nelson S. Roman, J.
Plaintiff moves seeking to have this Court strike the answer of all defendants to this action based on alleged spoliation of evidence. Specifically, plaintiff alleges that there are several items of medical evidence which to date have not been provided and have been declared missing by the defendants. Alternatively, plaintiff seeks to preclude all defendants from offering any evidence at the time this case is tried based on the same. Defendants oppose the instant motion for several reasons.
The within action is a medical malpractice action. This action was commenced in April, 2000. Plaintiff alleges that on December 18, 1998, she was injured by defendant DEAN SPELLMAN (Spellman) by his negligent performance of ambulatory foot surgery. Thereafter, plaintiff alleges that she was further injured when BERDJ H. STEPANIAN (Stepanian), Spellman's associate negligently performed a second surgery in an attempt to correct the first surgery. The second surgery was performed at defendants, OUR LADY OF MERCY MEDICAL CENTER (Center). It is alleged the Center's negligence stems from their employ of defendants Spellman and Stepanian. It is alleged, and undisputed, that the surgical procedures in question involved the insertion of a fixation device, a screw, and the subsequent removal of the same.
The Law of Spoliation of Evidence
Spoliation is the destruction of evidence whether intentional or by accident. Kirkland v. New York City Housing Authority, 236 A.D.2d 170 (1st Dept. 1997) (Court held that Third-Party plaintiff's failure to preserve a stove, a key piece of evidence crucial to Third-Party Defendant's defense, was spoliation of critical evidence warranting the dismissal of the Third-Party Action); Squittieri v. The City of New York, 248 A.D.2d 201 (1st Dept. 1998). Sanctions for spoliation are appropriate "where a litigant, Intentionally or negligently, disposes of crucial items of evidence involved in an accident before the adversary has an opportunity to inspect them." Id. at 173. Dismissal of an action or the striking of pleadings, while severe, is an appropriate remedy when the evidence spoiled is a "key piece of evidence," (emphasis added) whose destruction precludes inspection by an adverse party. Kirkland v. New York City Housing Authority, 236 A.D.2d 170 (1st. Dept. 1997); Mudge, Rose, Guthrie, Alexander & Ferdon v. Penguin Air Conditioning, Corp., 221 A.D.2d 243 (1st Dept. 1995). In determining the severity of the spoliation sanction, it is important [*2]to ascertain what prejudice if any the party seeking the sanction has incurred by the absence of the spoiled evidence. Kirkland v. New York City Housing Authority, 236 A.D.2d 170 (1st Dept. 1997). If the Court in its analysis concludes that because of the spoiled evidence

one party has destroyed critical physical proof, such that its opponents are 'prejudicially bereft of appropriate means to [either present or] confront a claim with incisive evidence,' the spoliator's pleading is properly stricken in order to obviate a trial that is 'based on rank swearing contests' (emphasis added)
DiDomenico v. C & S Aeromatik Supplies, Inc., 252 A.D.2d 41, 53 (2nd Dept. 1998) quoting, Hoening Products Liability, Impeachment Exception Spoliation Update, NYLJ, Apr. 12, 1993, at 6, col 5; Kirkland v. New York City Housing Authority, 236 A.D.2d 170 (1st. Dept. 1997). In fashioning this rule the Court is effectively recognizing the "resulting unfairness inherent in allowing a party to destroy evidence and then benefit from that conduct or omission." Id. Having said that, however, the Court has still indicated its preference for less drastic spoliation remedies when available and when the circumstances warrant the same. Tommy Hillfiger, USA, Inc., 300 A.D. 58 (1st Dept. 2002). Thus, in cases where the spoiled evidence is not crucial to a litigant's case, such that its absence does not prevent the outright prosecution or defense of a case, preclusion of evidence, rather than outright dismissal of pleadings, is the preferred remedy. Id.; Longo v. Armor Elevator Co., 278 A.D.2d 127 (1st Dept. 200) (Case involving a defective elevator which was subsequently repaired and the defective parts discarded before inspection by the adverse party. The Court concluded that there was "no reason to suppose that the missing items will prevent plaintiff from supporting her causes of action"); Annie Strelov v. Hertz Corporation, 171 A.D.2d 420 (1st Dept. 1991); Sage Realty Corporation v. Proskauer Rose L.L.P., 275 A.D.2d 11 (1st Dept. 2000); Betty Gallo v. Bay Ridge Lincoln Mercury, Inc., 262 A.D.2d 450 (2nd Dept. 1999).
In analyzing spoliation cases, the timing of evidence destruction can be dispositive. Indeed, when a party destroys evidence as well as when the evidence was first requested is relevant. Timing can often shed some light on whether evidence was intentionally destroyed, lost, or simply negligently destroyed. The assertion that evidence was never requested prior to its destruction, while compelling, is nevertheless not always excusable. The fact that evidence is destroyed prior to the commencement of an action and hence prior to being requested by an adverse party is not a cognizable excuse to a spoliation claim when the spoiler of the evidence had notice that the evidence might be needed for future litigation. DiDomenico v. C & S Aeromatik Supplies, Inc., 252 A.D.2d 41 (2nd Dept. 1998); Baglio v. St. John's Queens Hospital, 303 A.D.2d 341 (2003).
Taken together, the cases above give rise to a set of rules providing the framework within which spoliation cases are properly decided. First, It is axiomatic that control of the spoiled evidence prior to its destruction is a prerequisite to any claim alleging that a party destroyed evidence. It follows that if a party did not possess, control, or was otherwise in a position to prevent said evidence's destruction, no spoliation sanction can be had. Second, a spoliation sanction is always appropriate when evidence is destroyed thereby precluding an examination by an adverse party. Third, a spoliation sanction is available regardless of whether the evidence was destroyed through negligence or with specific intent. Fourth, the most drastic penalty for spoliation, the striking or dismissing of pleadings is only reserved for the cases where the evidence destroyed (key and crucial evidence) effectively prevents a party from completely prosecuting or defending its claim. Fifth, in cases where the evidence destroyed does not completely prevent a party from prosecuting or defending [*3]its claim, the appropriate remedy is a preclusion Order , precluding the offending party from offering evidence with respect to the evidence previously destroyed. Lastly, the fact that the evidence previously destroyed was not requested prior to its destruction, is not an excuse when the party who destroyed the evidence was on notice that said evidence would be needed for future litigation and as such, should have been preserved.
Discussion
In the case herein, plaintiff alleges that she has not received several items of discovery which are necessary to the prosecution of this case. Specifically, plaintiff alleges that she requested and has not received the following: (1) a copy of Spellman's operative report for plaintiff's surgery on December 18, 1998; (2) copies of post-operative x-rays and fluoroscopic images , lateral views, taken by Spellman after the surgery on December 18, 1998 allegedly to ensure that the screw inserted into plaintiff's foot was properly placed and aligned; (3) a copy of plaintiff's treatment note allegedly made by Dr. Nyland during a post-surgical visit to Spellman's office; (4) the screw which was initially implanted into plaintiff's foot by Spellman and subsequently removed by Stepanian; and (5) copies of x-rays taken by Stapanian after plaintiff's second surgery on December 30, 1998. Plaintiff claims that the items above have been requested and that she has been apprised that said items cannot be located. A review of the record fails to indicate when the items just mentioned were first requested.
Plaintiff submits that without these documents and items, her ability to prosecute her claims against the defendants has been substantially hindered. Plaintiff supports this contention with an affidavit from a Podiatric surgeon who opines that without these items plaintiff has been deprived "of crucial proof of malpractice."
With respect to the December 18, 1998 operative report evidencing the surgery performed by Spellman, defendant Spellman contends that said report could not be located within his own records but was nevertheless located within the records obtained from plaintiff's insurance company. Said report, was annexed to Spellman's opposition papers, has been exchanged and Spellman claims that because the insurance records are plaintiff's own insurance records they have had access to the report all along. Spellman contends that the report exists and not destroyed as plaintiff claims.
With respect to the post-operative x-rays and flouroscopic images, lateral views, taken by Spellman on December 18, 1998, Spellman initially contended that said x-rays and images were provided to plaintiff in 2003. Thereafter, only after plaintiff's expert stated that the images exchanged were not lateral views of plaintiff's foot and did not image the screw which had been implanted in her foot, Spellman submitted an affidavit indicating that the x-rays and flouroscopic images taken on December 18, 1998, were not lateral views but were instead plantar and dorsal views. This affidavit, by Spellman's own admission contradicts his prior deposition testimony where he testified that he had taken lateral images of plaintiff's foot. Thus, Spellman now contends that the only x-rays and flouroscopic images taken on December 18, 1998, do exist and have already been exchanged.
With respect to Dr. Nyland's note evidencing the December 29, 1998 visit to Spellman's clinic, Spellman contends that it has not been established that Dr. Nyland memorialized plaintiff's visit with an entry in her chart. Further, in an affidavit annexed to Spellman's opposition papers, Dr. Nyland contends that she does not recollect whether she made a note [*4]regarding the visit in question. She further states that to date, she has never seen any entry with respect to plaintiff's December 29, 1998 visit. Thus, Spellman contends that plaintiff has failed to establish that the note ever existed and that if it did exist, that it was destroyed by Spellman.
With respect to the screw removed by Stepanian and the post-operative x-rays he took on December 29, 1998, it is claimed by Stepanian, that said screw was removed and relinquished to the custody of the Center's pathology department after the surgery on December 30, 1998. The x-rays were also relinquished to the Center . In an affidavit, Stepanian further alleges that when he attempted to retrieve the screws and the x-rays, he was told that they could not be found. Consequently, Stepanian alleges that the failure to provide said documents cannot be imputed to him because they disappeared while in the Center's custody.
Spellman and Stepanian both submit that Dr. Nylan's note, if it even existed, is not crucial to the prosecution of plaintiff's case because it would show nothing of any significance with respect to the action herein. At most, it is contended, said entry would reveal any history that plaintiff might have given on that date. This kind of information, its contended, is not crucial to the prosecution of plaintiff's case. Thus, its absence in no way prejudices the plaintiff's ability to prosecute her case.
Spellman and Stepanian contend that generally, none of the records at issue are in anyway crucial to plaintiff's case. They support this by averring that despite the absence of the records, in 2003, plaintiff's expert was able conclude that plaintiff's injuries were due to malpractice. This is evidenced by an expert exchange provided by plaintiff and annexed to the opposition papers. They contend that evidently, the expert had enough evidence before him, without the records at issue herein, to conclude that malpractice had been the source of plaintiff's injury.
The Center submits that it searched for the screw and the post-operative x-rays taken on December 30, 1999. According to an affidavit, the search revealed that the items were not within the Center. In addition, the Center submits that its x-rays are routinely given to the attending physicians when they make such a request. Further, in another affidavit, the Center avers that items sent to pathology, such as the screw, are normally held until claimed by a doctor or until they are discarded in the ordinary course of business. The hospital does not keep logs indicating whether the screw or the x-ray was ever relinquished to Stepanian or any other doctor. The Center does state that plaintiff testified that she was shown post-operative x-rays after the December 30, 1999, surgery, thus indicating that Dr. Stepanian did have custody of said x-rays after the surgery.
The Center avers that the items of discovery which plaintiff claims are crucial to her case are in fact not essential to the prosecution of her case. The Center contends that the pre-and post operative x-rays are not essential because there are other sets of pre-and post-operative x-rays which depict the condition of plaintiff's foot before and after surgery. This is supported by Spellman and Stepanian's deposition. The Center also contends that the screw is not a crucial piece of evidence because its examination is not crucial to the prosecution of plaintiff's case. The screw, the Center contends, was removed because it was causing blockage rather than because the screw itself was defective. According to the Center, an examination of the screw is not essential or crucial to plaintiff's case.
Based on the above the Court concludes that the ultimate spoliation sanction, dismissal of pleadings, is unwarranted in this case. The Court finds that the items at issue are not pieces of [*5]key evidence whose absence will prevent plaintiff from prosecuting her case. The Court has reviewed the affidavit of plaintiff's expert, plaintiff's strongest evidence in support of this motion for spoliation. The Court concludes that by the expert's own testimony, the items at issue may be crucial. However, their absence does not prevent the prosecution of plaintiff's case. If that were the case, that without these items plaintiff is unable to pursue and prove her case, surely the expert would have stated the same. In addition, based on the record herein, the Court cannot conclude that the items herein were intentionally withheld or destroyed. Further, the items in question were created in 1998 and the action herein was not commenced until 2000. Nothing has been submitted to support a claim that the items herein where requested prior to the commencement of this action. Further, nothing has submitted to indicate that prior to the commencement of this action the defendants were on notice that the items herein should have been preserved for future litigation.
Having said that, however, the Court is nevertheless capable of issuing sanctions with respect to any of the missing evidence which was allegedly destroyed or which is alleged to never have existed. With respect to that evidence, the Court has the ability to preclude the use of any evidence not turned over during discovery. This prevents advantageous use of evidence not previously exchanged or previously alleged to have been destroyed.
The Court finds that the operative report exists and was exchanged, albeit late. Accordingly, the Court will issue no sanction with respect to that item.
With respect to missing lateral x-rays, the Court will not endeavor to ascertain whether the affidavit submitted by Spellman indicating that said x-rays were never taken is a self-serving affidavit. At this juncture said lateral view x-rays have not been exchanged and it is claimed that they do not exist. The claim is that the x-rays were plantar and dorsal views. Thus, Spellman and Stepanian are precluded from using, mentioning or submitting any lateral x-rays taken on December 18, 1998 at the time of trial, even if they are later found.
With respect to Dr. Nyland's alleged note regarding the December 29, 1998 treatment visit. This Court finds that based on the record it is impossible to determine if said entry ever existed. Nevertheless, defendants Spellman and Stepanian are precluded from using and submitting evidence regarding said note at trial even if it becomes available
With respect to the missing screw and the post-surgical x-rays taken on December 30, 1999 taken by Stepanian, based on the affidavits submitted it is apparent that said screw disappeared while in the Center's custody. Thus, the Center is precluded from using said screw or submitting evidence about the same at the time of trial even If it is later discovered. With respect to the December 30, 1998 x-rays, plaintiff's testimony that Stepanian showed her the x-rays at issue after December 30, 1998 directly contradicts Stepanian's affidavit where he alleges that he never got said x-rays from the Center. Consequently, it is impossible to determine who had this x-ray last and for the purposes of this motion, the Court will not endeavor to do that. Accordingly, all defendants are precluded from using said x-ray at the time of trial if it is later found.
Parties are directed to serve a copy of this decision and order on each other within thirty (30) days hereof.
 This constitutes this Court's decision and Order.
Dated :July 8, 2004
Bronx, New York_____________________
[*6]
Nelson S. Roman, J.S.C.