[786 NYS2d 41]

THE STANDARD FIRE INSURANCE COMPANY, as Subrogee of MARK D'ANDREA, Respondent, v FEDERAL PACIFIC ELECTRIC COMPANY, Appellant, et al., Defendant.

First Department, December 7, 2004

### APPEARANCES OF COUNSEL

*Steven J. London*, New York City (*David Samel* of counsel), for appellant.

*Speyer & Perlberg, LLP*, New York City (*Joseph B. Wolf* of counsel), for respondent.

### OPINION OF THE COURT

SULLIVAN, J.

In this subrogation action by The Standard Fire Insurance Company arising out of a fire loss covered by its insurance policy, the issue on appeal is whether the action against Federal Pacific Electric Company, which allegedly manufactured the electrical panel and circuit breakers claimed to have malfunctioned and contributed to the cause of the fire, should be dismissed, on the ground of spoliation of evidence, because of the irretrievable loss of the electrical panel and circuit breakers after Standard alone had inspected them.

The fire occurred on February 24, 1997, at the Staten Island residence of Standard's insured, Mark D'Andrea. It is alleged that some seven months earlier, in July 1996, Walsh Electric, also a defendant, performed electrical repairs at the D'Andrea home and installed an electrical service panel manufactured by Federal. Several weeks after the fire, Standard's engineer inspected the damaged premises and observed the electrical panel, a metal cabinet that housed circuit breakers. In his report, the engineer concluded: "[I]t is possible, but not certain, that an electrical fault ignited the subject fire. Furthermore, if the fire had an electrical cause, it is probable that a malfunction of the electrical service panel was a significant contributing factor." The report indicated that the electrical panel had been manufactured by Federal, but it did not identify the manufacturer of the circuit breakers. There is no evidence that Standard took any measures to preserve either the panel or the circuit breakers.

In August 1998, D'Andrea sued Standard under the policy to recover for his fire loss. Apparently, that lawsuit has been settled by a loss payment to D'Andrea, which gives rise to Standard's right of subrogation (*see J & B Schoenfeld, Fur Merchants v Albany Ins. Co.,* 109 AD2d 370, 372-373 [1985]). Thereafter, in

February 2000, Standard, as subrogee of D'Andrea, commenced this action against Federal and Walsh, basing its claim solely on the information obtained during the course of its engineer's inspection of the damaged premises. After the commencement of the action, Federal, to no avail, wrote to Standard's counsel inquiring about the availability for inspection of the allegedly defective electrical service panel. Federal subsequently sought to compel Standard to produce the equipment, obtaining two court orders, on April 12 and July 12, 2002, to produce, if still in existence, the electrical panel at issue as well as to comply with other unanswered discovery demands. Based on Standard's failure to respond to the first two orders, Supreme Court issued a third order, entered October 4, 2002, conditionally precluding Standard and dismissing the complaint unless, by October 28, 2002, Standard fully complied with the demands.

When Standard failed to comply with the conditional order by the date specified, Federal moved to strike the complaint or, alternatively, to preclude Standard from offering any evidence at trial. Federal also pointed out that Standard was required to identify not only the allegedly defective electrical panel but the circuit breakers, as well. In that regard, Federal submitted an affidavit from its assistant secretary stating that it had ceased manufacturing circuit breakers in 1986, a decade before Walsh's electrical repair at the D'Andrea home, and that it had sold the trademark right to its Stab-lok circuit breakers in that same year. The assistant secretary noted that two other companies—American Circuit Breaker and a Chinese company, VAB—manufactured circuit breakers that would have fit inside the electrical panel at the subject premises. According to the assistant secretary, only a physical examination of the circuit breaker would reveal the identity of the circuit breakers housed in the panel in question.

In opposing the motion, Standard alleged that it had only recently—in January 2003, more than two months after the conditional order's deadline—contacted its insured, D'Andrea, and learned that none of the house's fixtures, including the electrical panel and circuit breakers, had been salvaged. The motion court denied dismissal but precluded Standard from offering in evidence the electrical panel, which, as noted, had allegedly already been lost or destroyed. It did not, however, preclude Standard from offering other evidence regarding the missing or destroyed equipment.

Federal thereafter moved for dismissal of the complaint on the basis of Standard's spoliation of evidence, arguing that

without the allegedly defective service panel or circuit breakers, Standard would be unable to make out a prima facie case. Federal also sought sanctions for bringing a frivolous lawsuit. In that regard, Federal submitted Standard's own engineer's report, which indicated that it was "possible, but not certain" that the fire was caused by an electrical fault. Federal also submitted the affidavit from the assistant secretary in support of the prior motion attesting to Federal's 1986 cessation of circuit breaker manufacturing, as well as an additional affidavit from him stating that three companies that had acquired the legal rights to Federal's circuit breakers were all inscribing the Federal logo on their own circuit breakers.

In opposition, Standard submitted the affidavit of the engineer who had investigated the fire on its behalf. His report indicated that the electrical service panel had malfunctioned, that it was "probable" that the malfunction was a "significant contributing factor" in causing the fire, and that a "properly functioning electrical panel would have terminated the electrical current through the faulted circuit by tripping the breaker." According to the engineer, the panel was manufactured by Federal, whose panels had "attained a certain degree of notoriety for this type of malfunction." Standard argued that dismissal was unwarranted because of the absence of any showing that it or its subrogor, D'Andrea, deliberately or negligently caused the loss of the panel and circuit breakers and that, even without the panel and circuit breakers, Federal could still defend the action by showing that there was no evidence that the circuit breakers caused the fire and calling the fire marshal as a witness.

Supreme Court denied the motion, concluding that spoliation did not warrant the harsh remedy of dismissal since the parties could use other evidentiary sources to establish their positions. Specifically, it held, Federal "may be able to establish [its] position[.] after [examinations before trial] of [Standard's] experts and cross examination of those experts at trial." The court further found that issues of fact precluded the grant of summary judgment dismissing the complaint. Both orders are before us on appeal. The complaint should have been stricken.

It is undisputed that Standard defaulted on the conditional order of preclusion and dismissal entered October 4, 2002. It could not dispute that it had failed to respond timely to the single most important directive under all three orders, namely, the identification and production of the allegedly faulty electri-

cal equipment. Although a motion for an unconditional order of preclusion was unnecessary (*see Lopez v City of New York,* 2 AD3d 693 [2003]), Federal made such a motion nonetheless and Standard, in order to defeat the motion, was "required to demonstrate both a reasonable excuse for [its] default and the existence of a meritorious cause of action" (*id.* at 694; *see also Frankel v Hirsch,* 2 AD3d 399 [2003]).

As its excuse, counsel for Standard's sole explanation was that "[o]nly last week . . . was [he] able to obtain" the wireless telephone number of Standard's subrogor and policyholder, D'Andrea. Tellingly, there was no statement as to any other efforts undertaken to communicate with D'Andrea, much less any documentary proof thereof. When contacted, D'Andrea is alleged to have told counsel that "as far as he was aware, no part of the destroyed home, including the electric panel, had been salvaged." Yet, as the record shows, Standard's engineer states that he inspected the electrical panel and circuit breakers in March 1997, less than one month after the fire. According to Standard, the electrical panel and circuit breakers survived the fire and were available for inspection. Standard's engineer not only visually examined the assembly, but he even took a photograph of the panel bearing Federal's name. There are, however, no photographs from which the brand names of the circuit breakers themselves can be seen.

In any event, as a result of its investigation and in particular, the inspection of the electrical panel, Standard decided to bring this action against Federal and Walsh. In such circumstances, Standard should have foreseen that preservation of the panel and circuit breakers was absolutely essential to the assertion of any claim based upon a defect in the electrical equipment. As the record shows, Federal has raised a legitimate question about whether it even manufactured the circuit breakers. Thus, Standard, as subrogee of the homeowner, had an obligation to preserve the allegedly defective equipment for all parties to inspect; it had the authority, means and opportunity to safeguard the equipment, but inexplicably failed to do so. Its failure is all the more unfathomable since the entire purpose of its inspection of the equipment was to determine whether it had a basis for denying coverage to its insured or attempting to hold any other party responsible for the fire.

Standard argues, as it did before the motion court, that dismissal is unwarranted, given the absence of any showing that it or its subrogee deliberately or negligently caused the loss of the

panel and circuit breakers. In *Squitieri v City of New York* (248 AD2d 201, 202-203 [1998]), this Court held, "When a party alters, loses or destroys key evidence before it can be examined by the other party's expert, the court should dismiss the pleadings of the party responsible for the spoliation . . . Spoliation sanctions . . . are not limited to cases where the evidence was destroyed willfully or in bad faith, since a party's negligent loss of evidence can be just as fatal to the other party's ability to present a defense."

The leading case in this area is *Healey v Firestone Tire & Rubber Co.* (212 AD2d 351 [1995], *revd on other grounds* 87 NY2d 596 [1996]), where the plaintiff was injured by an exploding truck tire. Before the tire rims suspected of being involved in the accident could be inspected by Firestone, the alleged manufacturer, the trucking company, also a defendant, destroyed or discarded them. As a result, this Court dismissed the negligence and strict liability causes of action against Firestone, holding that "the inexcusable conduct of [the trucking company] in failing to preserve the critical evidence has fatally prejudiced Firestone in its defense of those portions of plaintiff's causes of action sounding in negligence and strict liability. No act or omission of Firestone was involved in the disappearance of the three tire rims, and their unavailability for expert examination and analysis. Under the circumstances, as a matter of elementary fairness, we dismiss those causes of action against Firestone" (212 AD2d at 352). As in *Healey*, Federal has been fatally prejudiced in defending against Standard's claims of product liability and negligence. While Standard's expert inspected the electrical equipment, it deprived Federal of the same opportunity by failing to preserve this critical evidence. This failure is all the more significant given the sharp question as to whether the allegedly defective circuit breakers were even manufactured by Federal.

In a similar situation to the case at bar, this Court, relying in part on *Healey*, reaffirmed the principle that negligent as well as intentional spoliation of a key piece of evidence may warrant dismissal. In *Kirkland v New York City Hous. Auth.* (236 AD2d 170 [1997]), the Housing Authority negligently disposed of a stove, a critical piece of evidence, and then commenced a third-party action against the company that had installed stoves in a number of apartments in the apartment complex. Reversing Supreme Court's denial of the motion to dismiss the third-party action because the third-party defendant had no opportunity to inspect the missing stove, this Court held (at 173):

> "Spoliation is the destruction of evidence. Although originally defined as the intentional destruction of evidence arising out of a party's bad faith, the law concerning spoliation has been extended to the non-intentional destruction of evidence . . .
>
> "Under New York law, spoliation sanctions are appropriate where a litigant, intentionally or negligently, disposes of crucial items of evidence involved in an accident before the adversary has an opportunity to inspect them. We have found dismissal to be a viable remedy for loss of a 'key piece of evidence' that thereby precludes inspection" (citations omitted).

As here, there was no showing in *Kirkland* that the spoliation was intentional. Nevertheless, we held that the evidence "clearly supports a finding that crucial evidence was negligently destroyed. . . . [T]here is no indication in the record that [the Housing Authority], as defendant, had taken any steps to assure preservation of the evidence" (*id.* at 173-174). Any sanction other than dismissal, we held, would "unfairly compel a party, which was not even a party at the time crucial evidence was lost, to defend an action when such loss has fatally compromised its ability to defend" (*id.* at 176). Although this Court was addressing a spoliation issue in the context of a personal injury case, our words are equally applicable here: "Commentary suggests that personal injury specialists, defense as well as plaintiff, almost uniformly recognize the elevated priority of preserving the evidence, so that drastic sanctions are not necessarily unduly harsh sanctions when a critical item of evidence is not preserved" (*id.* at 174).

*Kirkland* is directly applicable to this case. Standard should have recognized the "elevated priority of preserving the evidence." In the absence of any indication in the record that Standard had taken any steps to assure preservation of the evidence, dismissal was warranted. As in *Kirkland*, it would be manifestly unfair to require Federal, "which was not even a party at the time crucial evidence was lost, to defend an action when such loss has fatally compromised its ability to defend" (*id.* at 176).

The sanction of dismissal is warranted even though Standard was not the owner of the missing evidence. In *Amaris v Sharp Elecs. Corp.* (304 AD2d 457 [2003]), when a critical piece of evidence (a television set) was destroyed before the defendant had the opportunity to examine it, this Court held, "Although

[plaintiff] was aware the television that allegedly caused the injury was a crucial piece of evidence, he negligently failed to take sufficient steps to assure its preservation. The spoliation was clearly the result of plaintiff's negligence notwithstanding the fact that the television set was owned by plaintiff's employer, a nonparty. Defendant did nothing to contribute to the loss of the evidence, and its unavailability for examination and analysis was highly prejudicial" (*id.* at 457-458 [citation omitted]).

The sanction of striking a pleading has been applied even in instances where the destruction took place before litigation, provided the spoliator was on notice the evidence might be needed for future litigation (*see DiDomenico v C & S Aeromatik Supplies,* 252 AD2d 41, 53 [1998]). There can be no dispute that Standard was on notice at the time of the engineer's inspection of the premises, conducted within one month of the fire, that the electrical panel and circuit breakers would be needed for future litigation. That inspection was the sole basis for Standard's claim against Federal.

Supreme Court's determination precluding Standard from introducing evidence that already had been destroyed was not only meaningless but failed to address the hopeless position faced by Federal. Never having had the opportunity to examine the allegedly defective circuit breaker to determine whether it had even manufactured it, Federal would be required to defend against a claim that it had manufactured a defective circuit breaker that caused or contributed to the fire. In *Cabasso v Goldberg* (288 AD2d 116, 116 [2001]), where a U-Haul trailer's braking system, allegedly the cause of the accident, had been "irretrievably dismantled," we rejected a less onerous sanction than dismissal and affirmed the striking of U'Haul's answer. This Court was not persuaded by the argument that circumstantial evidence could be used, which would only "invite[ ] speculation and also permit[ the spoliator] the advantage of utilizing its own expert's report, notwithstanding its responsibility for destroying key evidence that prevented a proper testing of the trailer" (*id.* at 117). Similarly, the only proper sanction for Standard's loss of the electrical equipment is dismissal.

We have considered Standard's other arguments in favor of an affirmance and find them without merit. In light of our determination, we need not reach the merits of the appeal from the subsequent order denying Federal's motion for summary judgment dismissing the complaint.

Accordingly, the order of the Supreme Court, New York County (Walter B. Tolub, J.), entered February 6, 2003, which

denied the motion of defendant Federal Pacific Electric Company to strike the complaint, should be reversed, on the law, with costs and disbursements, and the motion granted. The Clerk is directed to enter judgment in favor of defendant Federal Pacific Electric Company striking the complaint as against it. Appeal from order, same court and Justice, entered October 16, 2003, which denied defendant Federal's motion for summary judgment dismissing the complaint, should be dismissed, without costs or disbursements, as academic.

NARDELLI, J.P., MAZZARELLI, LERNER and FRIEDMAN, JJ., concur.

Order, Supreme Court, New York County, entered February 6, 2003, reversed, on the law, with costs and disbursements, and defendant Federal Pacific Electric Company's motion to strike the complaint granted. The Clerk is directed to enter judgment in favor of defendant Federal Pacific Electric Company striking the complaint as against it. Appeal from order, same court, entered October 16, 2003, dismissed, without costs or disbursements, as academic.