Rossi v Doka USA, Ltd. (2020 NY Slip Op 02098)





Rossi v Doka USA, Ltd.


2020 NY Slip Op 02098


Decided on March 26, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 26, 2020

Richter, J.P., Gische, Mazzarelli, Gesmer, JJ.


10689N 156072/13 590168/14

[*1]Domenick Rossi, Plaintiff-Appellant,
v
Doka USA, Ltd., et al.,Defendants-Respondents. [And a Third-Party Action]


StolzenbergCortelli LLP, White Plains (Terrence James Cortelli of counsel), for appellant.
Biedermann Hoenig Semprevivo, Ne York (Philip C. Semprevivo of counsel), for respondents.



Order, Supreme Court, New York County (Debra A. James, J.), entered September 26, 2018, which granted defendant Doka USA Ltd.'s motion to dismiss the complaint as against it, and denied plaintiff's cross motion for sanctions against Doka, unanimously modified, to deny defendant's motion, and otherwise affirmed, without costs.
Plaintiff, a carpenter, was injured while installing concrete walls at the building that would become 4 World Trade Center. The walls were created using a reusable form system distributed to plaintiff's employer by defendant Doka. Doka's system employed tracks, so that a form could be filled with concrete, pushed into place along the track, and then pulled out again once the concrete had set. The form was moved back and forth on the track by use of a ratchet, approximately three feet in length, that attached to a bolt. Doka supplied the ratchets to plaintiff's employer, but denies that it manufactured or designed the ratchets. Doka provided training on how to use the system, including the ratchets, to the foremen working for plaintiff's employer. The foremen in turn trained the workers, including plaintiff. Plaintiff testified at his deposition that the ratchets frequently broke, and he remembered this happening on at least 10 occasions. In an email dated December 22, 2010, just over one month before the accident, Doka's senior account manager told two other Doka employees that he had been informed of several defective ratchets at the World Trade Center site.
Occasionally a form would not be situated evenly on the track and would become "bound," meaning difficult to move. According to plaintiff, workers had been trained to apply as much force to the ratchet as necessary when this happened. Although plaintiff testified that he had not been instructed to do so in training, it was common for workers to use their feet to add additional leverage on the ratchet, and that the foreman was aware of the practice. On the day of the accident, plaintiff was in the process of closing up a wall. According to Doka, this was supposed to be a task completed by two people working together in order to make sure the form moved evenly on the track and did not get bound. Plaintiff was working with a partner that day, but when he was injured he was apparently moving the wall by himself. The wall became bound, and plaintiff used his right foot to apply pressure onto the shaft of the ratchet. He testified that when he did this, the gears in the ratchet broke, propelling the ratchet forward and with it plaintiff himself, causing his knee to hit a brace that was directly in front of him. Plaintiff was not certain whether the ratchet was new, or whether it had any particular markings or labels on it, but based on past experience he was certain that it was a Doka ratchet because it had come in a package that contained other Doka materials.
Immediately after the accident, plaintiff saw his partner pick up the ratchet and inspect it. Plaintiff was advised to go see a site medic who was located on a lower floor. However, the medic was not there and plaintiff went home. Plaintiff does not know what happened to the ratchet after the accident, and the ratchet has never been recovered.
Plaintiff commenced this action over two years after the accident, asserting, inter alia, a product liability cause of action sounding in defective design. Doka served a notice of inspection demanding that plaintiff produce the ratchet that injured him, at which time he admitted he did not possess it.
Plaintiff served his own demand on Doka seeking emails "pertaining to any complaints of defective and malfunctioning Doka wrench/ratchet[s]." Doka conducted a broad search, but asserts that it failed to identify any emails concerning defective wrenches or ratchets supplied by Doka to plaintiff's employer for the project. In September of 2014, over one year after the action was commenced, Doka underwent a company-wide replacement of its email system. Any emails predating the replacement became irretrievable.
Doka moved for spoliation sanctions, arguing that the absence of the ratchet that allegedly broke at the time of plaintiff's injury entitled it to dismissal of the complaint. Plaintiff filed a cross motion, seeking to strike Doka's answer for spoliation, arguing that it destroyed relevant emails. The motion court granted Doka's motion, and dismissed the complaint as against it. The court held that the loss of the ratchet warranted dismissal because it meant that Doka could not "exclude the various possibilities that the accident was caused by misuse, alteration, or poor maintenance' . . . rather than some design or manufacturing defect." The court denied plaintiff's cross motion, finding that he had failed to establish spoliation based on Doka's alleged destruction of emails. The court reasoned that Doka searched its emails in April of 2014, when it was first notified that plaintiff alleged a defective ratchet, and that at that time, it could not locate any responsive emails. Hence, plaintiff had not established that the data lost during the subsequent email changeover actually resulted in the loss of relevant emails.
The issue on Doka's motion is not whether the ratchet plaintiff was using when he was injured was defectively designed. Rather, it is whether plaintiff forfeited any opportunity to establish a design defect at trial because, in the immediate aftermath of an accident that resulted in substantial trauma to his knee, he failed to secure the ratchet for purposes of a lawsuit. To answer that question, we must review the law of spoliation generally, and the law of spoliation as it applies to design defect cases specifically.
To obtain sanctions for spoliation, a party must establish that the non-moving party had an obligation to preserve the item in question, that the item was destroyed with a "culpable state of mind," and that the destroyed item was relevant to the party's claim or defense (see VOOM HD Holdings LLC v EchoStar Satellite LLC, 93 AD3d 33, 45 [1st Dept 2012]). A party can be deemed to have had a "culpable state of mind" for purposes of a spoliation sanction even if it engaged in no more than ordinary negligence (id.). However, "striking a pleading is usually not warranted unless the evidence is crucial and the spoliator's conduct evinces some higher degree of culpability" (Russo v BMW of North America, LLC, 82 AD3d 643 [1st Dept 2011]). When that drastic remedy is appropriate in the case of ordinary negligence, it is because the non-spoliating party carried its burden of establishing that the missing evidence was its "sole means" of defending the claim, its defense was otherwise "fatally compromised" by the spoliation, or it had become "prejudicially bereft" of being able to defend (Arbor Realty Funding, LLC v Herrick, Feinstein LLP, 140 AD3d 607, 609-610 [1st Dept 2016]). Supreme Court has broad discretion to determine a sanction for spoliation of evidence (Pegasus Aviation I, Inc. v Varig Logistics S.A., 26 NY3d 543, 551 [2015]). However, "the Appellate Division is vested with a corresponding power to substitute its own discretion for that of the trial court even in the absence of abuse" (Andon v 302-304 Mott St. Assoc., 94 NY2d 740, 745 [2000]).
In cases like this, where the claim is based on a design defect (as opposed to a manufacturing defect), the absence of the product is not necessarily fatal to the defendant. As this Court has observed, a product's design "possibly might be evaluated and the defect proved circumstantially" (Kirkland v New York City Hous. Auth., 236 AD2d 170, 175 [1st Dept 1997]; see Dayal v Coinmach Indus. Co., 284 AD2d 206, 207 [1st Dept 2001]). Circumstantial evidence could, one would imagine, be the testimony of someone involved in the design process, and plans or photographs of the product before it entered the stream of commerce. It could also, assuming that the missing product was one of multiple units manufactured using the same design, be another one of those units.
Preliminarily, it is questionable whether plaintiff should be held responsible at all for the absence of the ratchet. The accident occurred in the midst of a major construction project, which is a chaotic environment even when things are proceeding in routine fashion. Once the accident happened, plaintiff, who was suffering from his injuries and went directly to seek medical attention, unsurprisingly did not have securing the ratchet as his foremost priority. Further, there is nothing in the record to indicate that he would have found the ratchet if he had returned to the site after visiting the medic.
With respect to whether the absence of the ratchet was fatal to Doka's defense, plaintiff testified that on at least ten different occasions a ratchet broke while he was using it. Specifically, the gears became stripped when force was exerted on the ratchet, which is what happened at the time of the accident. Plaintiff's foreman separately testified that on several separate occasions he had to order additional ratchets from Doka because the ones previously delivered had broken. Further, the December 22, 2010 email from Doka's senior account manager to two other Doka employees referred to anecdotes he had heard about several defective ratchets at the World Trade Center site.
The record indicates that, at the time of the accident, there were multiple ratchets present on the WTC site, and that new ratchets were provided on a regular basis. To the extent any ratchets still existed, an expert could have tested one or several, and investigated whether the gears tended to strip when force was exerted on the ratchet. Further, the simplicity of the tool negates the concerns identified in cases where design defect claims were dismissed based on spoliation. For example, in Squitieri v City of New York (248 AD2d 201 [1st Dept 1998]), a case on which Doka places heavy reliance, the product at issue was a street sweeper. The cab of the sweeper became filled with noxious carbon monoxide fumes, and the sweeper had been disposed of by the City, which owned it. This Court dismissed the City's third-party complaint against the sweeper's manufacturer alleging defective design, stating that "the absence of the sweeper would prevent [the manufacturer] from countering the design defect claim with evidence that the City's misuse, alteration, or poor maintenance of this particular sweeper was a proximate cause of [plaintiff's] injuries" (248 AD2d at 203-204). Unlike a street sweeper, the design of the ratchet is simple, and there is no evidence that it could have been, or was, altered or maintained in such a way that could have contributed to plaintiff's accident. As for misuse, although there is no evidence that plaintiff was ever warned not to do so, plaintiff concedes that he used his foot to apply force to it. There is no other theory of misuse. Again, an expert could use one or more of the other ratchets to investigate whether the application of force by foot could cause the ratchet to break.
Notably, Doka does not, in any meaningful way, argue why its inability to inspect the exact ratchet that plaintiff was using would prevent it from defending against the products liability claim. Instead, it vociferously claims that without the actual ratchet it cannot know whether it was even the manufacturer or distributor of the ratchet. However, it is abundantly clear from the record, even from Doka's own witnesses, that Doka was responsible for the ratchets being made available to the workers installing the walls, which, whether or not it manufactured the ratchet, would make it liable for any defect in its design (see Messina v New York City Trans. Auth., 84 AD3d 439, 440 [1st Dept 2011]). Moreover, Doka makes no effort to identify other entities that could have been responsible for making the ratchets available to plaintiff and the other workers. Based on the foregoing, it cannot on this record be said that Doka was prejudiced by the absence of the ratchet, and so the court should not have penalized plaintiff, much less resorted to the drastic remedy of dismissing his complaint.
We now turn to plaintiff's cross motion for spoliation sanctions based on Doka's failure to preserve emails when it switched its email service provider in September 2014. Plaintiff complains that Doka should have placed a litigation hold on its emails system when he commenced the action. However, plaintiff resorts to nothing more than speculation when he surmises that there were emails on those servers that could have assisted him in establishing his design defect claim. Indeed, Doka represented that it conducted a search of the old server before it was replaced, and found nothing responsive. The email dated December 22, 2010, in which Doka's senior account manager told two other Doka employees that he had been informed of [*2]several defective ratchets at the World Trade Center site, was generated one month before the accident happened and 2½ years before plaintiff commenced this action. There is no way of knowing whether that email, and any emails responding to it, were deleted outside the ordinary course of Doka's business operations. Accordingly, plaintiff has not carried his burden of establishing that there were emails still on the server, at the time Doka switched its email provider, that were relevant to his claim (see VOOM HD Holdings LLC v EchoStar Satellite LLC, supra, 93 AD3d at 45).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: MARCH 26, 2020
CLERK