OPINION OF THE COURT
Thomas P. Phelan, J.
Plaintiffs seek to recover damages for injuries sustained by infant plaintiff, Nassim White, on August 3, 2002 when he fell from a piece of playground equipment owned and maintained by defendant. As alleged, infant plaintiff was climbing a chain ladder, which was dilapidated and partially anchored to the ground by a combination lock in one location, when he fell and suffered head injuries.
This action was certified trial ready on August 22, 2005, and plaintiffs filed a note of issue on or about October 5, 2005.
Defendant moved for summary judgment dismissing plaintiffs’ complaint pursuant to CPLR 3212 on November 30, 2005. Defendant’s motion was granted without opposition by short *473 form order dated January 18, 2006 and entered on January 23, 2006. After service upon plaintiffs of the notice of entry of the default judgment on February 7, 2006, plaintiffs filed the instant motion.
Plaintiffs assert that the initial return date for defendant’s motion was December 29, 2005, a date on which the court was closed according to a report by E-Law. This part was, in fact, closed on December 29, 2005 and the return date of defendant’s motion was thus adjourned until January 3, 2006. While E-Law subsequently reported that the motion had been adjourned to January 3, 2006, it also reported that the court was closed on that date as well. This E-Law report was erroneous, however, as this part was not actually closed on January 3, 2006 and defendant’s motion was submitted on that date.
On the basis of the E-Law report, plaintiffs’ counsel assumed that the return date would once again be adjourned in light of the fact that it was scheduled for a date on which the court was seemingly closed. Accordingly, plaintiffs’ counsel did not submit opposition papers and sought the assistance of Nassau County Lawyer’s Services in ascertaining the next return date. While awaiting a response from Nassau County Lawyer’s Services plaintiffs’ counsel received a copy of the January 18, 2006 order dismissing the complaint. Plaintiffs now argue that the default order of this court should be vacated on the grounds that their reliance on E-Law was excusable.
CPLR 5015 (a) (1) permits the court to vacate a default judgment where there has been an “excusable default” by the party seeking vacatur (see, CPLR 5015 [a] [1]). A party seeking to vacate a default judgment bears the burden of demonstrating both a justifiable excuse for the default and a meritorious defense (Zino v Joab Taxi, Inc., 20 AD3d 521 [2d Dept 2005]). There is strong public policy in favor of resolving cases on the merits, and a party who delays in opposing a summary judgment motion should not be deprived of his day in court where he proves the absence of an intent to abandon the action and a lack of prejudice to defendant caused by the delay (Burgess v Brooklyn Jewish Hosp., 272 AD2d 285 [2d Dept 2000]).
Under CPLR 2005, it is within the court’s discretion to determine whether law office failure is a reasonable excuse for a party’s default or delay (CPLR 2005; LaValle v Astoria Constr. & Paving Corp., 266 AD2d 28 [1st Dept 1999]). Movant must, however, submit supporting facts in evidentiary form sufficient to justify the default and mere neglect, though characterized as *474 law office failure, will not suffice (Incorporated Vil. of Hempstead v Jablonsky, 283 AD2d 553 [2d Dept 2001]).
Here, plaintiffs’ attorney has provided a detailed explanation as to her reason for failing to timely oppose defendant’s motion for summary judgment. Plaintiffs’ reliance upon a report by E-Law that this court was closed on January 3, 2006 was reasonable, especially given that E-Law’s prior report that the court was closed on December 29, 2005 was, in fact, accurate. Plaintiffs have pursued this matter diligently through nearly three years of litigation, and their failure to oppose defendant’s motion is not a part of an inexcusable pattern of willful default and neglect that indicates an intent to abandon the action (see, Roussodimou v Zafiriadis, 238 AD2d 568 [2d Dept 1997]). Moreover, plaintiffs assert that considering defendant’s motion for summary judgment on the merits will not prejudice defendant in any way, and defendant does not refute this assertion in its opposition papers.
Additionally, plaintiffs have demonstrated that their claim against defendant is meritorious. Plaintiffs have offered photographic evidence to support their contention that one or more dangerous conditions existed on defendant’s property and to suggest that infant plaintiff was injured as a direct result of his encounter with the dangerous conditions. Moreover, plaintiffs have also submitted deposition testimony of an employee of defendant as a basis for their contention that defendant created or had notice of the dangerous condition.
Accordingly, plaintiffs’ motion to vacate summary judgment hereinbefore granted to defendant is granted. Defendant’s motion for summary judgment is restored, and must now be considered on the merits.
Summary judgment will be awarded when there is no triable issue of fact and the court can render a decision as a matter of law (Barclay v Denckla, 182 AD2d 658 [2d Dept 1992]). A party moving for summary judgment bears the burden of establishing a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact (Tessier v New York City Health & Hosps. Corp., 177 AD2d 626 [2d Dept 1991]).
Generally, in order to prove defendant’s negligence in a matter concerning premises liability, plaintiff must demonstrate that: (1) the premises were not reasonably safe; (2) defendant created the dangerous condition that caused plaintiffs injuries or had actual or constructive notice of that condition; and (3) *475 defendant’s negligence in allowing the unsafe condition to exist was a substantial factor in causing plaintiffs injury (Schwartz v Mittelman, 220 AD2d 656 [2d Dept 1995]). In an action where defendant is a municipality, however, prior written notice of the dangerous condition is required in order to impose liability in certain statutorily enumerated circumstances (see, General Municipal Law § 50-e [4]). In those instances, constructive notice will not impute liability to a municipality (Amabile v City of Buffalo, 93 NY2d 471 [1999]).
Defendant argues that summary judgment is warranted because defendant had no prior written notice of the defective condition on the playground equipment. Defendant does not purport that issues of fact exist as to whether the premises were reasonably safe and whether the dangerous condition was a substantial factor in causing infant plaintiffs injuries. At issue, therefore, is only whether prior written notice of a defective condition is required under the circumstances before this court.
There are various layers of state and local law pertaining to prior written notice requirements. First, the general provision of state law that pertains to prior written notice requirements is General Municipal Law § 50-e (4), which sets forth that liability may not be imposed against a municipality for personal injuries sustained by an individual due to dangerous conditions on municipal streets, highways, bridges, culverts, sidewalks or crosswalks unless the municipality previously received written notice of those defects. It states in pertinent part that:
“No other or further notice, no other or further service, filing or delivery of the notice of claim, and no notice of intention to commence an action or special proceeding, shall be required as a condition to the commencement of an action or special proceeding for the enforcement of the claim; provided, however, that nothing herein contained shall be deemed to dispense with the requirement of notice of the defective, unsafe, dangerous or obstructed condition of any street, highway, bridge, culvert, sidewalk or crosswalk, or of the existence of snow or ice thereon, where such notice now is, or hereafter may be, required by law, as a condition precedent to liability for damages or injuries to person or property alleged to have been caused by such condition, and the failure or negligence to repair or remove the same after the receipt of such notice.” (General Mu *476 nicipal Law § 50-e [4].)
Further, bodies of state law that govern particular types of municipalities, such as Town Law and Village Law, set forth prior written notice requirements. And finally, many municipalities also set forth their own local laws pertaining to prior written notice requirements. A conundrum arises, however, when prior written notice laws passed by municipalities stand in direct conflict with prior written notice laws passed by the State Legislature.
Municipalities possess the general authority to enact laws requiring prior written notice of defects. This authority has been held to fall under a local government’s power to legislate relating to the presentation, ascertainment, disposition and discharge of claims against it (Municipal Home Rule Law § 10 [1] [ii] [a] [5]; see, NY Const, art IX, § 2 [c] [ii] [5]) and the acquisition, care, management and use of its highways, roads, streets, avenues and property (Municipal Home Rule Law § 10 [1] [ii] [a] [6]; see, NY Const, art IX, § 2 [c] [ii] [6]; see also, Holt v County of Tioga, 56 NY2d 414 [1982]; Fullerton v City of Schenectady, 309 NY 701 [1955]).
Adding to a municipality’s authority is its ability under Municipal Home Rule Law § 10 (1) (ii) to pass local laws that supercede provisions of the body of state law governing that particular type of municipality. A municipality’s power of supersession only applies where the State Legislature has not expressly prohibited the adoption of the type of local law the municipality seeks to enact and where the proposed local law is not inconsistent with preexisting state law (see, Municipal Home Rule Law § 10; Walker v Town of Hempstead, 84 NY2d 360 [1994]). Accordingly, in passing a prior written notice law, a local law must not be inconsistent with General Municipal Law § 50-e or the body of law specifically governing that particular type of municipality and must not be expressly prohibited by any pre-existing state law. This principle was visited by the Court of Appeals in Walker v Town of Hempstead (supra).
The issue in Walker was whether the Town of Hempstead’s local prior written notice law was inconsistent with and prohibited by Town Law § 67 and General Municipal Law § 50-e (4). In fact, Town Law § 67 and General Municipal Law § 50-e (4) stand for the same principle of law, as Town Law § 67 does nothing more than specifically adopt General Municipal Law § 50-e (4) as the relevant law pertaining to prior written notice requirements for towns. The central problem in Walker was *477 that, while General Municipal Law § 50-e (4) states that prior written notice of a dangerous condition is only required with respect to a street, highway, bridge, culvert, sidewalk or crosswalk, Town of Hempstead Code § 6-2 stated that prior written notice was required in order to impose liability on the Town for dangerous conditions in any “parking field, beach area, swimming or wading pool or pool equipment, playground or playground equipment, skating rink or park property” (see, General Municipal Law § 50-e [4]; Town of Hempstead Code § 6-2). In sum, Town of Hempstead Code § 6-2 enumerated types of municipal land that would be subject to a prior written notice requirement above and beyond those enumerated by Town Law § 67 and General Municipal Law § 50-e (4).
The Court found that Town of Hempstead Code § 6-2 was inconsistent with Town Law § 67 and General Municipal Law § 50-e (4), reasoning that the Legislature would not have enumerated six specific instances in which prior written notice of a dangerous condition may be required if it intended to allow for enactment of prior written notice requirements in other circumstances. Moreover, the Court reasoned that the language of General Municipal Law § 50-e (4), that “[n]o other or further notice . . . shall be required as a condition to the commencement of an action,” is clearly prohibitory in that it strictly limits written notice requirements to dangerous conditions on the six types of municipal land set forth in that section. Accordingly, the Court held that the provisions of Town of Hempstead Code § 6-2 were inconsistent with Town Law § 67 and General Municipal Law § 50-e (4) and expressly prohibited by the State Legislature, and therefore that a lack of prior written notice of a dangerous condition on a municipal paddleball court was not a defense to plaintiff Walker’s cause of action.
At issue here is whether Code of the Village of Hempstead § 39-1 (B) is inconsistent with and expressly prohibited by state law. Code of the Village of Hempstead § 39-1 (B) states in pertinent part:
“Damages or injuries due to defective parking field, swimming or wading pool or pool equipment, playground or playground equipment, recreation center, parks or park property; notice to village required. No civil action shall be maintained against the Incorporated Village of Hempstead for damages or injuries to person or property sustained by reason of any defective parking field, swimming or wad *478 ing pool or pool equipment, playground or playground equipment, recreation center, parks or park property, no matter where situated, being defective, out of repair, unsafe, dangerous or obstructed, unless written notice of the defective field, swimming or wading pool or pool equipment, playground or playground equipment, recreation center, parks or park property was actually served upon the Board of Trustees by such service as is hereinafter described upon the Village Clerk and there was a failure or neglect within a reasonable time after due notice to repair or remove the defect, danger or obstruction complained of.”
The stark contrast between Walker and the matter before this court is the absence of a provision in the Village Law that expressly adopts General Municipal Law § 50-e as the relevant law governing prior written notice for all villages. Instead, Village Law § 6-628 governs prior written notice for villages in the state of New York, and states in pertinent part:
“No civil action shall be maintained against the village for damages or injuries to person or property sustained in consequence of any street, highway, bridge, culvert, sidewalk or crosswalk being defective, out of repair, unsafe, dangerous or obstructed or for damages or injuries to person or property sustained solely in consequence of the existence of snow or ice upon any sidewalk, crosswalk, street, highway, bridge or culvert unless written notice of the defective, unsafe, dangerous or obstructed condition or of the existence of the snow or ice, relating to the particular place, was actually given to the village clerk and there was a failure or neglect within a reasonable time after the receipt of such notice to repair or remove the defect, danger or obstruction complained of, or to cause the snow or ice to be removed, or the place otherwise made reasonably safe.”
In evaluating whether Code of the Village of Hempstead § 39-1 (B) is inconsistent with Village Law § 6-628, it is immediately clear that it is inconsistent for the same reasons that Town of Hempstead Code § 6-2 was found to be inconsistent with Town Law § 67. More specifically, the Legislature, in drafting Village Law § 6-628, would not have enumerated six specific instances in which prior written notice of a dangerous condition may be required if it intended to allow for enactment of prior written notice requirements in other circumstances.
*479 It is arguable, however, whether the language of Village Law § 6-628 expressly prohibits the provisions of Code of the Village of Hempstead § 39-1 (B). The Village Law lacks the language of Town Law § 67 and General Municipal Law § 50-e (4) that the Court in Walker found to constitute a strict prohibition. More specifically, Village Law § 6-628 does not state that “[n]o other or further notice . . . shall be required as a condition to the commencement of an action.” At the very least, therefore, Code of the Village of Hempstead § 39-1 (B) is not expressly prohibited by Village Law § 6-628 for the same reason that Town of Hempstead Code § 6-2 was expressly prohibited by Town Law § 67.
Nonetheless, Code of the Village of Hempstead § 39-1 (B) is expressly prohibited by General Municipal Law § 50-e (4). While Village Law § 6-628 does not specifically adopt the language of General Municipal Law § 50-e (4), this does not diminish the controlling authority of General Municipal Law § 50-e (4) over villages. General Municipal Law § 50-e (1) states that the entire section is applicable to all public corporations as defined by General Construction Law § 66. The term “public corporation” encompasses municipal corporations including counties, towns, cities and villages (see, General Construction Law § 66 [1], [2]). As General Municipal Law § 50-e (4) is, therefore, applicable to villages, its language that “[n]o other or further notice . . . shall be required as a condition to the commencement of an action” is an express prohibition on any local laws requiring prior written notice in circumstances other than those enumerated by General Municipal Law § 50-e (4). As such, this court need not further evaluate whether the language of Village Law § 6628 expressly prohibits the provisions of Code of the Village of Hempstead § 39-1 (B).
Accordingly, the promulgation of Code of the Village of Hempstead § 39-1 (B) was without the Village’s supersession authority under Municipal Home Rule Law § 10 (1) (ii) (e) and is therefore invalid. As such, the fact that defendant never received prior written notice of a defect in the playground equipment upon which infant plaintiff Nassim White was injured is not a viable defense to this cause of action. Plaintiffs may succeed in this action by proving that defendant created the dangerous condition or had actual or constructive notice of the dangerous condition (see, Schwartz v Mittelman, supra).
This court is thus left to consider whether triable issues of fact exist as to whether defendant created or had notice of the defective playground equipment. The deposition testimony of *480 Kevin Lowry, an agent of defendant, reveals that he was charged with maintaining playground equipment, that his crews were required to do visual checks of the equipment and report damage, that a maintenance crew had been present at the accident site a day before the accident occurred, that the maintenance team was short staffed, that written records of damage or repair to the playground do not exist, and that the staff receives no training on how to report damaged playground equipment. As such, triable issues of fact exist as to whether any of defendant’s agents created the dangerous condition by anchoring the chain ladder to the ground with a combination lock, and further whether defendant had constructive or actual notice of the dangerous condition in light of the fact that a maintenance crew had been present at the playground the day before the incident and because written records of damage or repair to the playground equipment do not exist.
Accordingly, defendant’s motion for summary judgment pursuant to CPLR 3212 is denied.
Finally, plaintiffs argue that defendant’s answer should be stricken on the grounds that it spoliated evidence by disposing of the playground equipment upon which infant plaintiff was injured just days after the accident occurred. Spoliation of evidence occurs where a litigant, intentionally or negligently, disposes of crucial items of evidence before his adversary has an opportunity to inspect them (Abar v Freightliner Corp., 208 AD2d 999 [2d Dept 1994]).
The court’s sound discretion governs the nature and degree of sanction to be imposed for spoliation of evidence (Dennis v City of New York, 18 AD3d 599 [2d Dept 2005]). To warrant the striking of a pleading, the destroyed evidence must have been essential to the movant’s case and the movant must be prejudiced such that it cannot prove its claim (id.). A less severe sanction than the striking of a pleading is appropriate where the missing evidence does not deprive the moving party of the ability to establish his or her claim or defense (Iannucci v Rose, 8 AD3d 437 [2d Dept 2004]).
Although defendant here spoliated a key piece of evidence, plaintiffs were nevertheless able to take color photographs of the chain ladder, the combination lock anchoring that chain ladder and the playground equipment to which the chain ladder was affixed. Plaintiffs were then able to have an expert generate a report on the basis of physical inspection of the accident site and color photographs of the playground equipment. As *481 such, plaintiffs have had. some opportunity to examine the evidence, and have not been entirely prevented from proving their case. Accordingly, plaintiffs’ motion to strike defendant’s answer is denied.
An alternative sanction against defendant, however, is warranted in the form of a missing evidence charge to the jury at the time of trial (see, PJI 1:77.1 [2006]; Ifraimov v Phoenix Indus. Gas, 4 AD3d 332 [2d Dept 2004]; Marro v St. Vincent’s Hosp. & Med. Ctr. of N.Y., 294 AD2d 341 [2d Dept 2002]). Such a charge will allow a jury to determine the weight that the spoliation of the playground equipment bears on defendant’s position and the overall outcome of this action.