[718 NYS2d 276]

Kesha Lane, Respondent, v Fisher Park Lane Co. et al., Appellants.

First Department, November 30, 2000

## APPEARANCES OF COUNSEL

*Evan David Lieberman* of counsel, Garden City (*Brand & Brand*, attorneys), for respondent.

*Carol R. Finocchio* and *Lawrence B. Goodman* of counsel, New York City (*Caulfield Law Office,* attorneys), for Fisher Park Lane Co. and another, appellants.

*Michelle S. Russo* of counsel, Baldwin (*Gregory E. Brower* on the brief; *Chesney & Murphy, L. L. P.,* attorneys), for Union Bank of Switzerland, appellant.

## OPINION OF THE COURT

SULLIVAN, P. J.

At issue on this appeal is whether the trial court erred in

imposing sanctions against defendants for spoliation of evidence before considering whether, quite apart from the disposed-of evidence, defendants were entitled to summary judgment and a dismissal of the complaint as a matter of law.

Plaintiff was employed as a secretary/word processor by Madamoiselle [*sic*] Off-Fifth Temporaries, Inc., a temporary employment agency. While working as a temporary employee in the offices of defendant Union Bank of Switzerland (UBS), in premises at 299 Park Avenue in Manhattan, owned and managed, respectively, by defendants Fisher Park Lane Co. and Fisher Brothers Management Co., plaintiff was allegedly injured when the door of a supply cabinet fell on her. UBS and the Fisher defendants separately moved for summary judgment dismissing the complaint and cross claims, UBS on the ground that plaintiff was its "special employee" and that workers' compensation is therefore her exclusive remedy,* and the Fisher defendants contending that, as the out-of-possession landlord, Fisher did not have an obligation to repair or maintain the cabinet. In addition, all the defendants asserted lack of notice. Plaintiff cross-moved for sanctions against defendants based on their spoliation of evidence, i.e., the cabinet in question, including, *inter alia*, striking their answers and, more specifically, UBS's workers' compensation defense and the Fisher defendants' comparative negligence defense. Viewing the spoliation of evidence issue as the threshold question, the court granted the cross motion and struck defendants' affirmative defenses, concluding that plaintiff's ability to establish a prima facie case of negligence had been impaired by the destruction, at the behest of UBS with the acquiescence of the Fisher defendants, of the cabinet one year after the litigation was commenced. Since, in our view, the complaint and cross claims should have been dismissed as against all defendants, we reverse. In any event, the remedy for the spoliation, i.e., the striking of the affirmative defenses noted, bore no relationship to the loss of the evidence.

■ The trial court's fatal error was to address the spoliation issue, rather than defendants' entitlement to dismissal of the complaint on a point of law, as the threshold question. While severe sanctions may be imposed upon a party who destroys key evidence before an opposing party has an opportunity to examine that evidence (*see, Squitieri v City of New York*, 248 AD2d 201; *Kirkland v New York City Hous. Auth.*, 236 AD2d

---

* After the accident, plaintiff received workers' compensation benefits through Madamoiselle's workers' compensation carrier.

170, 173), the entitlement to judgment as a matter of law, for a reason completely unrelated to the evidence destroyed, cannot be impaired. "In deciding whether to impose sanctions * * * 'courts will look to the extent that the spoliation of evidence may prejudice a party and whether a [particular sanction] will be necessary as " 'a matter of elementary fairness.' " ' " (*Hartford Fire Ins. Co. v Regenerative Bldg. Constr.*, 271 AD2d 862, 863, quoting *Puccia v Farley*, 261 AD2d 83, 85, quoting *Kirkland v New York City Hous. Auth, supra*, at 175.) It can scarcely be disputed that where a defendant is entitled to dismissal as a matter of law on the basis of a defense having nothing to do with the evidence allegedly destroyed, that evidence cannot be considered critical to the plaintiff's case. Nor, under such circumstances, is the destruction of that evidence prejudicial to plaintiff. Accordingly, it is the question of defendants' entitlement to dismissal of the action, rather than plaintiff's entitlement to sanctions for the spoliation of evidence, which is the threshold issue.

■■ The sole remedy of an employee against his employer for injuries in the course of employment is benefits under the Workers' Compensation Law. (*See, Gonzales v Armac Indus.*, 81 NY2d 1, 8; *Billy v Consolidated Mach. Tool Corp.*, 51 NY2d 152, 156; *see also*, Workers' Compensation Law §§ 11, 29 [6].) "[A] general employee of one employer may also be in the special employ of another, notwithstanding the general employer's responsibility for payment of wages and for maintaining workers' compensation and other employee benefits * * *. A special employee is described as one who is transferred for a limited time of whatever duration to the service of another * * *. General employment is presumed to continue, but this presumption is overcome upon clear demonstration of surrender of control by the general employer and assumption of control by the special employer [citations omitted]." (*Thompson v Grumman Aerospace Corp.*, 78 NY2d 553, 557.) While whether a person is considered a special employee is generally a question of fact, a determination of special employment status may, where the undisputed facts compel such a conclusion, be made as a matter of law. (*Id.*, at 557-558.)

Plaintiff began her employment with Madamoiselle in March 1996 and was assigned to work at UBS's offices in approximately April 1996. For about one month before the accident, she was assigned, on a daily, full-time basis, to the same department, where she worked exclusively for two individuals,

whom she considered her "bosses." Her desk was situated outside her bosses' offices. Plaintiff testified that her UBS supervisor signed her time sheet, but that she was paid by Madamoiselle. On the day of the accident, after "checking with [her] bosses" to see whether there was anything that required her immediate attention, plaintiff went to the copy room—where the accident occurred—to obtain certain materials she needed to finish a proposal she was working on for one of her bosses. According to plaintiff, when she opened an overhead cabinet to get paper, the upper hinge detached and the door swung down and struck her. She continued working on the day of the accident, but advised her UBS bosses that she would not be in for the next two days, a Thursday and Friday. The following week, plaintiff returned to work and worked for the full week, at the end of which she was advised, by both Madamoiselle and UBS, not to return to the bank.

In determining special employment status, a "significant and weighty" (*id.*, at 558) factor "focuses on who controls and directs the manner, details and ultimate result of the employee's work". (*Id.*) Here, plaintiff's work was controlled and directed by UBS. (*See, Zylinski v Garito Contr.*, 268 AD2d 427.) While Madamoiselle issued plaintiff's paychecks, there is no showing that it played any role in supervising or directing plaintiff as she carried out her assignments for the bank. (*See, Hanchett v Graphic Techniques*, 243 AD2d 942, 944.) In the absence of a showing of direction or control, the mere fact that plaintiff "regularly reported to [Madamoiselle] regarding the scope of [her] assigned tasks" is of no moment—especially since the tasks were "assigned" by UBS. In addition, contrary to plaintiff's claim that Madamoiselle rather than UBS ultimately ended plaintiff's assignment at the latter, her deposition testimony establishes that both companies informed her that the UBS assignment had ended.

To demonstrate Madamoiselle's control over her work, plaintiff relies on the statement in her affidavit that "certain tasks that [she] was requested by [UBS] to perform were not included in the arrangement between Madamoiselle and [UBS and that her supervisor at Madamoiselle] had to extend advance approval for these additional tasks, and account for price increases accordingly." This conclusory affidavit, however, fails to state that plaintiff has personal knowledge of these facts, i.e., the contractual relationship between Madamoiselle and UBS. Accordingly, it is of no probative value in opposing the motion for summary judgment. (*See, Marinelli v Shifrin,*

260 AD2d 227; *see also, Capelin Assocs. v Globe Mfg. Corp.*, 34 NY2d 338, 342.) The claim finds no other support in the record. Moreover, and in any event, there is no showing that plaintiff or anyone else ever requested advance approval from Madamoiselle for the tasks she was asked to perform while working on this particular assignment for UBS. Accordingly, since we are persuaded that plaintiff's special employment status has been established as a matter of law, summary judgment to UBS should have been granted on its affirmative defense of workers' compensation.

The Fisher defendants are also entitled to summary judgment dismissing the complaint. "A landlord is generally not liable for negligence with respect to the condition of property after the transfer of possession and control to a tenant unless the landlord is either contractually obligated to make repairs and/or maintain the premises or has a contractual right to reenter, inspect and make needed repairs at the tenant's expense and liability is based on a significant structural or design defect that is contrary to a specific statutory safety provision." (*Johnson v Urena Serv. Ctr.*, 227 AD2d 325, 326, *lv denied* 88 NY2d 814; *see also, Guzman v Haven Plaza Hous. Dev. Fund Co.*, 69 NY2d 559.)

The lease between Fisher and UBS imposes no obligation on the former to repair the cabinet in question. Pursuant to article 45 of the lease, the tenant accepted the part of the premises where the accident occurred in the condition and state of repair existing as of the date on which the tenant took occupancy. Article 9 of the lease requires UBS to make "such repairs to the demised premises and the fixtures and appurtenances therein as are necessitated by the act, omission, occupancy or negligence of Tenant." (§ 9.01.) While article 9 also permits Fisher to make such repairs, at UBS's expense, if UBS fails to make the repairs, the lease does not require Fisher to do so.

In addition, under article 16 of the lease, Fisher reserved the right to reenter the premises "for the making of such repairs or alterations as Landlord may deem necessary for the Building or which Landlord shall be required to or shall have the right to make by the provisions of this Lease or any other lease in the Building." (§ 16.01.) While Fisher retained the right to reenter to make certain repairs, there is no claim here that the defect—a broken cabinet door—involved building structure or design or that any statutory safety provision was violated. Accordingly, plaintiff's reliance on Administrative Code of the City of New York §§ 27-127 and 27-128, which impose a duty

on the owner of a building to safely maintain the building and its facilities (*see*, *Guzman v Haven Plaza Hous. Dev. Fund Co.*, *supra*, 69 NY2d, at 566; *see also*, *Beck v Woodward Affiliates*, 226 AD2d 328, 330), is misplaced, since the cabinet door which allegedly injured plaintiff is not structural in nature so as to impose liability under the Administrative Code. (*See*, *Quinones v 27 Third City King Rest.*, 198 AD2d 23.)

Accordingly, the order of Supreme Court, New York County (Emily Goodman, J.), entered May 16, 2000, which denied defendants' motions for summary judgment dismissing the complaint and all cross claims against them and granted plaintiff's cross motion for sanctions based on spoliation of evidence to the extent of dismissing defendants' affirmative defenses, should be reversed, on the law, without costs or disbursements, the motions granted, the complaint dismissed and the cross motion denied. The Clerk is directed to enter judgment in favor of defendants dismissing the complaint.

ROSENBERGER, WILLIAMS, ELLERIN and BUCKLEY, JJ., concur.

Order, Supreme Court, New York County, entered May 16, 2000, reversed, on the law, without costs or disbursements, defendants' motions for summary judgment dismissing the complaint and all cross claims against them granted, the complaint dismissed and plaintiff's cross motion for sanctions denied.