Erkocaj v Port Auth. of N.Y. & N.J. (2004 NY Slip Op 50067(U))

[*1]

Erkocaj v Port Auth. of N.Y. & N.J.

2004 NY Slip Op 50067(U)

Decided on February 18, 2004

Supreme Court, Queens County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 18, 2004

Supreme Court, Queens County
 EDMOND ERKOCAJ and VOLBONA ERKOCAJ, Plaintiffs, 
against
THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, THE CITY OF NEW YORK, HALMAR EQUITIES MANAGEMENT DIVISION and HALMAR PERISHABLE CO., INC., Defendants.
INDEX NO. 3141/98
APPEARANCES:

Attorneys for Plaintiffs:
MICHAEL B. PALILLO, ESQ.,
POLLACK, POLLACK, ISAAC & DE CICCO
225 Broadway, Suite 307
New York, New York 10007
212-233-8100
Attorneys for Defendants,
The Port Authority of New York
and New Jersey, Halmar
Equities Management Division,
and Halmar Perishable Co., Inc.:
ANN ODELSON, ESQ.,
CARROLL, McNULTY & KULL LLC
11 Penn Plaza - Third Floor, Suite 320
New York, New York 10001
212-868-9090

Arnold N. Price, J.
The following papers numbered 1 to 10 read on this motion by defendants for summary judgment dismissing the complaint or in the alternative, dismissing the Labor Law claims.
Papers
Numbered
[*2] Notice of Motion - Affidavits - Memorandum of Law -
Exhibits ......................................... 1-5
 Answering Affidavits - Exhibits .................... 6-8
 Reply Affidavits ................................... 9-10
Upon the foregoing papers it is ordered that the motion is granted and the complaint is dismissed.
This is an action for personal injuries allegedly sustained by plaintiff, Edmond Erkocaj, on February 21, 1997 when he purportedly fell from an elevated bin located at Warehouse Building 77 at JFK International Airport in Queens (the "premises"). The City of New York [FN1] owns the premises which it leased to the Port Authority, which, in turn, leased to defendant Halmar Equities Management Division and Halmar Perishable Co., Inc. (collectively "Halmar").
On November 10, 1993, Halmar subleased the premises to non-party DJ Air Services, Inc. ("DJ Air") as an empty shell. Pursuant to the terms of the sublease agreement, DJ Air was responsible for the repairs and maintenance of the premises. The sublease agreement also provided that Halmar had the right to enter the premises upon reasonable advance notice of not less than 24 hours to inspect or make repairs or alterations for the safety and preservation of the premises.
On the day of the accident, plaintiff was employed by DJ Air. His general duties as an employee of DJ Air included loading and unloading cargo from planes and trucks and loading and unloading boxes onto shelves at the premises. On the morning of his accident, plaintiff was working at the warehouse placing boxes in bins and putting them on shelves. Immediately prior to his accident, plaintiff was instructed by his supervisor to take down boxes from a third level shelf. To retrieve these boxes, plaintiff stood in a metal crate that was then raised by a forklift to the third level shelf, approximately three meters off the ground. While standing in the crate on the forklift, plaintiff began removing boxes from the shelf and loading them into the crate. To retrieve boxes further down the shelf, plaintiff put one foot on the shelf and leaned forward. While doing so, plaintiff's foot fell through the space between the metal bars on the shelving unit, causing him to fall to the ground. According to plaintiff, the boxes should have been resting on a wooden pallet. However, because the lighting conditions in the warehouse were too dark, plaintiff contends that he could not see that the pallets were missing.
Plaintiff, and his wife suing derivatively, commenced this action against the defendants for common-law negligence and for violations of Labor Law §§ 240(1), 241(6) and 200. In the complaint as amplified by the bill of particulars, plaintiff alleges, inter alia, that defendants were negligent in the ownership, operation, control, supervision, management, inspections, maintenance, and repair of the premises in allowing a dangerous condition, namely, an unstable [*3]elevated metal bin, to exist. Plaintiff further alleges that defendants were negligent by allowing the premises to be improperly constructed, failing to sufficiently illuminate the areas located within the premises, and failing to repair the lighting at the premises. Furthermore, in support of his Labor Law claims, plaintiff cites to several violations of the New York Industrial Code.
In support of their motion for summary judgment, defendants argue that they are out-of-possession landlords, and thus, cannot be held liable for plaintiff's injuries. Specifically, defendants contend that they did not control or maintain the premises where the accident occurred, nor did they cause, create or have notice of the defective condition that purportedly caused plaintiff to fall. Therefore, defendants contend, they cannot be held liable on a common-law negligence theory.
Additionally, defendants argue that the Labor Law claims are without merit as plaintiff's accident did not occur in an area where construction, demolition, excavation or repair work was being performed. Moreover, defendants argue, in addition to not having notice of the purportedly unsafe condition which caused the subject accident, they did not supervise, direct or control the plaintiff's work. Hence, it is the defendants' contention that they also cannot be held liable under the Labor Law statute.
That branch of defendants' motion which seeks dismissal of the Labor Law claims is granted. Plaintiff was not "employed" to work at the premises as that term is used in sections 240(1), 241(6) and 200 of the Labor Law (see generally, Gibson v Worthington Div. of McGraw-Edison Co., 78 NY2d 1108; Chabot v Baer, 55 NY2d 844; Somerville v Usdan, 255 AD2d 500; Strunk v Buckley, 251 AD2d 491; Valinoti v Sandvik Seamco, Inc., 246 AD2d 344; Agli v Turner Constr. Co., Inc., 246 AD2d 16). Indeed, the "type of work the plaintiff was performing at the time of injury" (Panek v County of Albany, 99 NY2d 452, 457; Joblon v Solow, 91 NY2d 457, 465), is not an activity or line of employment protected by the Labor Law. More precisely, the work plaintiff was performing neither constitutes "the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure" (Labor Law § 240[1]; see generally, Martinez v City of N.Y., 93 NY2d 322; Acosta v Banco Popular, 308 AD2d 48; Pavlou v City of N.Y., 300 AD2d 120; Keenan v Just Kids Learning Ctr., 297 AD2d 708), nor does it constitute "construction, excavation or demolition work" within the meaning of Labor Law § 241(6) (see generally, Nagel v D & R Rlty. Corp., 99 NY2d 98; Antonczyk v Congregation Mosdos D'Rabini of Monsey, Inc., 309 AD2d 776; Acosta v Banco Popular, supra).
Further, summary dismissal of the Labor Law § 200 claim is warranted as there is no evidence that the defendants directed or controlled the manner in which the plaintiff was performing his work (see, Rizzuto v Wenger Contr. Co., 91 NY2d 343; Lombardi v Stout, 80 NY2d 290), or had notice of the dangerous condition which produced the injury (see, Sprague v Peckham Materials Corp., 240 AD2d 392; Sobelman v Norstar Bank, 226 AD2d 444; Mantovi v Nico Constr. Co., 217 AD2d 650). Consequently, plaintiff is not within the class of workers that these statutory provisions were enacted to protect and he cannot invoke them as a basis of [*4]recovery. Instead, plaintiff is entitled to recover only if he can establish the elements of a traditional negligence cause of action (see, Gibson v Worthington Div. of McGraw-Edison Co., supra). Here, plaintiff cannot make out a prima facie case of negligence.
It is well settled that an owner-lessor is not liable in negligence for conditions upon land after the transfer of possession and control (Lane v Fisher, 276 AD2d 136; Butler v Passaro, 166 AD2d 548; Mancini v Cappiello Rlty. Corp., 144 AD2d 154, appeal denied 73 NY2d 708; Bellen v Lomanto, 125 AD2d 905, appeal denied 69 NY2d 610; see, Putnam v Stout, 38 NY2d 607). This rule extends to structural or design defects in existence when the lessee takes possession (Mancini v Cappiello Rlty. Corp., supra). An out-of-possession owner-lessor, may be liable, however, for injuries caused by defective or dangerous conditions upon the leased premises if the owner-lessor has retained control over the premises (Butler v Passaro, supra.) A reservation of the right to enter and repair may be deemed to constitute sufficient retention of control to provide the out-of-possession owner-lessor with constructive notice of the condition, thereby subjecting it to liability (see, Stalter v Prudential Ins. Co. of Am., 220 AD2d 577; Hecht v Vanderbilt Assocs., 141 AD2d 696, appeal dismissed 73 NY2d 918). Nevertheless, such right of reentry alone is insufficient as liability must be based on a significant structural or design defect that is contrary to a specific statutory safety provision (Lane v Fisher, supra; Johnson v Urena Serv. Ctr., 227 AD2d 325, lv denied 88 NY2d 814; Deebs v Rich-Mar Rlty. Assocs., 248 AD2d 185; Velazquez v Tyler Graphics, 214 AD2d 489).
Here, based on the evidence before the court, the defendants did not exercise control over the premises or assume any contractual responsibility for everyday maintenance and repairs. Indeed, the lease specifically provides that the tenant has exclusive possession and control over the premises and is responsible for maintaining, repairing or keeping same in a safe condition. While the lease permits defendants to make such repairs at the tenant's expense, if the tenant fails to make the repairs, the lease does not require the defendants to do so (see, Lane v Fisher, supra). Moreover, the defendants had the right to enter the premises for inspection and repair, plaintiff has failed to offer any evidence establishing the existence of any structural or design defect which violates a specific statutory provision.
Plaintiff's reliance on section 27-735 of the Administrative Code, entitled "Artificial light requirements," is misplaced. This section provides that an "[a]dequate means for producing artificial light by electricity shall be provided in every room or floor space in every building...." There is no evidence, indeed, plaintiff does not even allege that defendants failed to provide an "adequate means for producing artificial light be electricity." Rather, plaintiff alleges that the lights were often out, and that, he in fact on occasion, replaced the bulbs. The need to replace a light bulb is considered routine maintenance which is the tenant's responsibility pursuant to the terms of the lease (see, e.g., Smith v Shell Oil Co., 85 NY2d 1000; Haghighi v Bailer, 240 AD2d 368).
Furthermore, the expert affidavit relied upon by plaintiff to establish that the lighting conditions constituted a structural or design defect is of no probative value. During his deposition, plaintiff admitted that at the time of his expert's inspection the premises was not in [*5]the same condition as when his accident occurred. Thus, the expert affidavit is conclusory and insufficient to raise an issue as fact as to whether a structural or design defect existed at the time of plaintiff's accident (see, e.g., Cruz v Deno's Wonder Wheel Park, 297 AD2d 653; Figuero v Haven Plaza Hous. Dev. Fund Co., Inc., 247 AD2d 210). Consequently, since burned out or broken light bulbs are not significant structural or design defects, defendants cannot be charged with constructive notice solely based on a right of reentry (see, e.g., Pavon v Rudin, 254 AD2d 143).
Accordingly, defendants are entitled to summary judgment dismissing the complaint.
Dated: February 18, 2004 
 J.S.C.
Decision Date: February 18, 2004
Footnotes

Footnote 1:This action was previously dismissed as asserted against the City of New York.