[959 NYS2d 133]

James L. Melcher, Appellant, v Apollo Medical Fund Management L.L.C. et al., Respondents.

First Department, January 29, 2013

16

## APPEARANCES OF COUNSEL

*Patterson Belknap Webb & Tyler, LLP,* New York City (*Stephen P. Younger, Sarah E. Zgliniec* and *Anthony C. DeCinque* of counsel), and *Jeffrey A. Jannuzzo,* New York City, for appellant.

*Windels Marx Lane & Mittendorf, LLP,* New York City (*Scott R. Matthews* and *James Tracy* of counsel), for respondents.

## OPINION OF THE COURT

RICHTER, J.

In 1995, defendant Brandon Fradd formed Apollo Medical Partners (Apollo Partners), a hedge fund that invests in companies in the biotechnology and medical device industries. Fradd also formed defendant Apollo Medical Fund Management L.L.C. (Apollo Management) to manage the investor money on behalf of the hedge fund. Although Apollo Partners was profitable at first, in late 1997, it suffered significant losses and withdrawal of investors. As a result, Fradd decided it would be beneficial to partner with someone who had expertise in technical analysis of the stock market. A mutual friend introduced Fradd to plaintiff James L. Melcher, an investment manager who had more than 30 years of experience on Wall Street. At the time, Melcher was the sole shareholder and president of Balestra Capital, which managed two hedge funds with $50-$60 million in assets. After some initial meetings, Fradd asked Melcher to become his business partner, and Melcher agreed.

By operating agreement dated January 8, 1998, Fradd and Melcher became managers and members of Apollo Management.[1] The operating agreement set forth a formula for dividing net profits between Fradd and Melcher. Melcher and Fradd would equally share the net profits realized from new investment assets brought into the fund after Melcher became a member. This equal division of net profits would be made

---

1. Initially, a third person was also a member and manager, but was removed several months later.

regardless of whether Melcher or Fradd introduced the new assets into the fund.

In fact, the allocation of net profits was made in a manner contrary to the terms of the operating agreement. Unbeknownst to Melcher, Fradd instructed Apollo Partners' accountants to use a completely different formula to divide the net profits. According to Fradd, this new formula was memorialized in a May 21, 1998 amendment to the operating agreement (the May 1998 amendment). Pursuant to this purported amendment, Melcher was credited with 50% of the net profits from only those new assets that he himself brought into the fund; he was not paid any portion of net profits based on new assets Fradd brought in. Thus, under the revised methodology, Melcher ended up receiving a lesser share of the net profits than he was entitled to under the operating agreement.

At the end of each year, the accountants split the net profits using the revised formula Fradd had given them. According to Melcher, he complained to Fradd in January 2001, and met with Fradd over the next two years in an effort to resolve the matter. Fradd contends that no such meetings took place, and that Melcher never protested the division of net profits. On October 27, 2003, Fradd removed Melcher as a member of Apollo Management based on a provision in the operating agreement allowing Fradd to unilaterally discharge a member upon 10 days written notice.

In December 2003, Melcher commenced this action against Apollo Management and Fradd. The second amended complaint, as relevant here, asserted causes of action alleging that (i) Apollo Management breached the operating agreement by not paying Melcher his proper share of the net profits (breach of contract); (ii) Fradd was unjustly enriched by receiving part of Melcher's share of the net profits (money had and received); and (iii) Fradd lacked the authority to remove Melcher as a member of Apollo Management (improper removal).

Defendants answered and asserted several affirmative defenses. In their first affirmative defense, defendants maintained that Melcher was estopped from asserting the breach of contract claim as a result of the purported May 1998 amendment. Defendants claimed that Melcher had been paid his share of net profits in accordance with the formula set forth in the amendment, that he had received financial statements and K-1 forms reflecting those net profits, and that he had never protested or complained about the allocation of profits. Defendants' second

affirmative defense asserted that this same conduct by Melcher resulted in a waiver of the breach of contract claim.

One of the central issues in this litigation is whether or not the May 1998 amendment is genuine. If, as Fradd claims, the operating agreement was amended, then Melcher was paid his proper share of the net profits. If, on the other hand, there was no amendment, then Melcher was underpaid. Fradd maintains that in the spring of 1998, he and Melcher orally agreed to amend the operating agreement to reflect the revised allocation of net profits. According to Fradd, he asked Apollo Management's law firm to prepare an amendment to the operating agreement reflecting the change. Fradd claims that the law firm prepared the amendment and that he signed it on May 21, 1998.[2]

Melcher denied having orally agreed to changes to the operating agreement and disclaimed any knowledge of the May 1998 amendment. According to Melcher, the first time he heard of the supposed amendment was in December 2003 when Fradd faxed it to him. Believing the amendment had been fabricated and backdated, Melcher's counsel asked defense counsel to make the original document available for forensic ink testing to determine whether, as Fradd claimed, it was signed in May 1998.

In response, Fradd produced a document that was missing the first page and that had been scorched over the signature line. Fradd claimed that the day after Melcher's counsel requested production of the amendment, he accidentally burned the original document while making tea. According to Fradd, he placed the document near the kettle in his kitchen, answered the door, and returned to find that the paper had ignited from his gas stove flame. Fradd claimed that the top page was destroyed, and the bottom page got partly browned, scorching a portion of his signature.

Melcher's ink testing expert examined the original document and concluded that the exposure of the document to high heat made it impossible to determine the date of Fradd's signature. The expert opined that the location of the scorching suggested something other than chance or accident. It is Melcher's position that Fradd intentionally burned the document to render any forensic testing ineffective. Melcher unearthed further evi-

---

2. Fradd claims that when he signed the amendment, he believed that it would be effective upon his signature alone, and that Melcher's signature was not required. It is undisputed that Melcher did not sign any amendment to the operating agreement.

dence that the amendment had been recently fabricated and backdated. Specifically, the amendment was not contained in the files of the successor to the law firm that had represented Apollo Management and supposedly drafted the amendment. Furthermore, neither the law firm's time records nor invoices reflect the drafting of any such amendment, and the lawyers whom Fradd claimed drafted it could not vouch for it.

Fradd denied all allegations that the document was backdated and insisted that the burning was accidental. Defendants retained their own expert to test the paper and attempt to recreate the circumstances that resulted in the burning. Defendants' expert could not determine whether the signature was from May 1998 when the amendment was purportedly executed, but did opine that the ink was no longer aging and was therefore at least eight months old and maybe over two years old.

In July 2007, Melcher moved to strike defendants' pleadings and for entry of a default judgment as a sanction for Fradd's alleged fabrication and spoliation of evidence. In an order entered September 20, 2007, Supreme Court (Herman Cahn, J.) denied the motion, finding issues of fact that should be submitted to a jury. In December 2007, Melcher again moved to strike the pleadings, submitting an affidavit of a fire protection engineer, who said it was impossible for the burning to have occurred in the way Fradd claimed. In an order entered December 12, 2007, Justice Cahn denied the motion, again finding issues of fact to be resolved at trial.

Melcher appealed, and in a decision and order entered June 5, 2008, this Court affirmed both of Justice Cahn's orders. We concluded that "[d]eceit warranting the striking of the answer was not conclusively demonstrated. Whether the destruction of evidence was intentional or merely negligent presents an issue for the trier of fact, and plaintiff failed to establish that without the evidence he would be unable to prove his case" (52 AD3d 244, 245 [1st Dept 2008] [citations omitted]).

Following our decision and prior to trial, defendants reversed course and told the trial court (Donna M. Mills, J.) that they would no longer be relying on the May 1998 written amendment. Instead, they planned to argue before the jury that the operating agreement was orally amended. Defendants asked the court to exclude any evidence of or reference to the burning of the May 1998 amendment. Over Melcher's objection, the court ruled that Melcher could not present evidence about the amendment on his direct case, but could only present evidence in

rebuttal if defendants raised the amendment. The court rejected Melcher's arguments that the striking of defendants' pleadings was a threshold issue under this Court's June 5, 2008 decision.

The liability issues in this case were tried before a jury in May 2009.[3] No evidence or cross-examination was permitted about the alleged falsification and burning of the May 1998 amendment. The jury heard evidence on Fradd's claims that Melcher had either waived, or was estopped from asserting, the breach of contract claim based on Melcher's alleged failure to have protested or complained about the allocation of profits. In addition, both sides presented evidence about Fradd's unilateral removal of Melcher as a member of Apollo Management. The trial court reserved decision on Melcher's money had and received claim against Fradd.

After its charge, the trial court submitted a number of interrogatories to the jury. In its verdict, the jury rejected defendants' contention that Fradd and Melcher had orally modified the operating agreement in May 1998. The jury further found that Fradd had breached the provision of the operating agreement concerning the division of net profits. The jury also concluded that defendants failed to prove that Melcher knowingly and voluntarily waived his contractual right to the net profits provided for in the operating agreement. However, the jury found that Apollo Management had reasonably relied on Melcher's conduct in accepting less compensation than he was otherwise entitled to under the operating agreement. Put another way, the jury concluded that Melcher was estopped from asserting that Apollo Management had breached the operating agreement. Finally, the jury rejected Melcher's claim that Fradd lacked the authority pursuant to the operating agreement to unilaterally remove Melcher as a member.[4]

After trial, Melcher moved: (i) to renew his prior motions to strike defendants' pleadings for deceit; (ii) to dismiss defendants' defense of equitable estoppel and to enter judgment against Apollo Management on the breach of contract cause of action; (iii) for judgment on his money had and received cause of action against Fradd, which had been reserved for decision by the court; and (iv) for a new trial on the cause of action alleging

---

3. Liability and damages had previously been bifurcated.

4. The jury also returned verdicts in Melcher's favor on causes of action not at issue on this appeal. Defendants appealed from those parts of the verdict but this Court affirmed (84 AD3d 547 [1st Dept 2011], *revd on other grounds* 18 NY3d 915 [2012]).

that Melcher was improperly removed as a member of Apollo Management. The trial court (Donna M. Mills, J.) denied the motion, and the court (Melvin L. Schweitzer, J.) subsequently issued a judgment in accord with Justice Mills' decision and the jury verdict.

■ On appeal, Melcher argues that the court should have granted his posttrial motion to renew his previous motions to strike defendants' pleadings on the ground that defendants fabricated and spoliated the May 1998 amendment. It is axiomatic that a motion to renew must be based upon new facts not offered on the prior motion that would change the prior determination (CPLR 2221 [e] [2]; *see Nassau County v Metropolitan Transp. Auth.*, 99 AD3d 617 [1st Dept 2012]). Melcher's posttrial motion to renew was properly denied because it contained no new facts. This Court already determined that issues of fact existed about whether the burning of the amendment was intentional or negligent (52 AD3d at 245). In the absence of new evidence, the trial court could not have granted the relief sought.

In the alternative, Melcher asks this Court to remand for an evidentiary hearing on whether defendants fabricated, backdated and intentionally burned the amendment, and to direct the court to strike the pleadings if they did. Although we agree that a hearing is necessary, given the postverdict posture of the case, striking the pleadings would not be an appropriate sanction. CPLR 3126 provides that if a party "wilfully fails to disclose information which the court finds ought to have been disclosed . . . the court may make such orders with regard to the failure or refusal as are just." Thus, sanctions may be imposed under CPLR 3126 "when a party intentionally, contumaciously or in bad faith fails to comply with a discovery order or destroys evidence prior to an adversary's inspection" (*Sage Realty Corp. v Proskauer Rose*, 275 AD2d 11, 17 [1st Dept 2000], *lv dismissed* 96 NY2d 937 [2001]).

CPLR 3126 provides a court with a broad range of options in addressing a party's discovery abuses. In making its determination of the appropriate sanction, the court must consider the degree to which the contumacious conduct or destruction of evidence prejudiced the other party (*Sienkiewicz v 370/CPW Owners Corp.*, 74 AD3d 781 [2d Dept 2010] [prejudice must be considered in determining whether striking a pleading is necessary as a matter of elementary fairness]; *Baldwin v Gerard Ave., LLC*, 58 AD3d 484 [1st Dept 2009] [party seeking sanction

for spoliation has burden of establishing prejudice]; *Lane v Fisher Park Lane Co.*, 276 AD2d 136, 139·[1st Dept 2000] ["In deciding whether to impose sanctions . . . courts will look to the extent that the spoliation of evidence may prejudice a party"] [internal quotation marks omitted]). The drastic remedy of striking a pleading "is usually not warranted unless the evidence is crucial and the spoliator's conduct evinces some higher degree of culpability" (*Russo v BMW of N. Am., LLC*, 82 AD3d 643, 644 [1st Dept 2011]).

Where spoliation of evidence deprives a plaintiff of any means of establishing a prima facie case, striking the answer is an appropriate remedy (*Gray v Jaeger*, 17 AD3d 286 [1st Dept 2005]; *Herrera v Matlin*, 303 AD2d 198 [1st Dept 2003]). Likewise, striking a pleading may be justified where the spoliation deprives the plaintiff of the ability to confront a defense (*Tommy Hilfiger, USA v Commonwealth Trucking*, 300 AD2d 58 [1st Dept 2002]; *see Sage Realty*, 275 AD2d at 18 [striking pleading justified by deliberate conduct that "effectively impedes the ability of the deprived party to assert a claim or a defense"]; *Standard Fire Ins. Co. v Federal Pac. Elec. Co.*, 14 AD3d 213, 218 [1st Dept 2004] [party must be fatally prejudiced]). Striking a party's pleading "would be too drastic a remedy where [the opposing party is] not entirely bereft of evidence tending to establish [its] position" (*Cohen Bros. Realty v Rosenberg Elec. Contrs.*, 265 AD2d 242, 244 [1999], *lv dismissed* 95 NY2d 791 [2000]; *see Hannah v Chorney*, 79 AD3d 468 [1st Dept 2010]).

■ Applying these principles, we conclude that the striking of defendants' pleadings, given the postverdict posture of the case, would not be an appropriate sanction. Even if defendants fabricated or spoliated the evidence, in view of the jury's verdict, any such misconduct did not prejudice Melcher in establishing or defending his case. First, Melcher's breach of contract claim rested on the original unamended operating agreement, and the May 1998 amendment was not part of his case-in-chief. Thus, any mischief concerning the amendment could not have prejudiced Melcher's ability to present his prima facie case (*see Cohen Bros. Realty*, 265 AD2d at 244). Nor, in light of the jury's verdict, did defendants' alleged misconduct prejudice Melcher in challenging defendants' defense. The May 1998 amendment was not introduced at trial and defendants instead argued that there was an oral amendment. Although not fully articulated on appeal, it appears that Melcher had planned to introduce evidence of the alleged fabrication of the written amendment to discredit

defendants' claim that an oral amendment existed. But even if such evidence were admissible for that purpose, it would not have made any difference given the jury's verdict rejecting defendants' claim that the operating agreement had been orally amended. Thus, Melcher prevailed on the only issue to which the written amendment could have had any possible relevance.

Melcher places undue reliance on this Court's decision in *317 W. 87 Assoc. v Dannenberg* (159 AD2d 245 [1990]). In that case, the principal of the third-party defendant created a backdated document and used it in the litigation. The motion court granted the plaintiffs' motion to strike the third-party answer, and we affirmed. Nothing in the case creates a per se rule that the answer must be struck in all cases where fraud is shown (*see e.g. Kasoff v KVL Audio Visual Servs., Inc.*, 87 AD3d 944 [1st Dept 2011] [denying motion to strike answer and imposing lesser sanction where the defendants admittedly altered document and produced it during discovery as if it were an original business record]).

█ Although we conclude that striking defendants' pleadings would be an inappropriate sanction here, we are troubled that the allegations of fraud and deceit remain unaddressed. Defendants' alleged misconduct should not be immune from inquiry merely because they made a last-minute decision not to rely upon the allegedly fabricated and spoliated document. By the time defendants altered their position at trial, Melcher had spent substantial time and expense in attempting to prove the falsity of the amendment. Fundamental fairness and maintaining the integrity of the judicial system require that Melcher's allegations be subject to an evidentiary hearing. We cannot countenance purposeful fabrication of evidence, if that is what occurred, and ignore it simply because the document was not introduced at trial. Thus, in the exercise of our discretion, we remand the matter to the trial court to conduct a hearing. If Melcher's allegations are proven, the court should impose a monetary sanction, such as attorney/expert fees and disbursements, based on the nature and extent of defendants' wrongdoing.

Although the jury found in Melcher's favor that the operating agreement had been breached, it concluded that he was equitably estopped from collecting the amounts due to him under the contract. The equitable estoppel defense was based on evidence that Melcher had received financial statements and K-1 forms reflecting lesser net profits than he was entitled to under the

contract, and that he had never protested or complained. In an interrogatory, the jury found that Apollo Management had reasonably relied on Melcher's conduct in accepting less fees than he was otherwise entitled. Based on that verdict, the court entered judgment dismissing Melcher's breach of contract claim.

Melcher argues that the jury's finding on equitable estoppel should be set aside because there was no proof that Apollo Management relied on Melcher's conduct to its detriment. The standard for setting aside a jury verdict is well-settled. A verdict may be reversed on the grounds of legal insufficiency where "there is simply no valid line of reasoning and permissible inferences which could possibly lead rational [people] to the conclusion reached by the jury on the basis of the evidence presented at trial" (*Cohen v Hallmark Cards*, 45 NY2d 493, 499 [1978]). In making this assessment, the evidence must be viewed in the light most favorable to the prevailing party (*Bello v New York City Tr. Auth.*, 50 AD3d 511 [2008]).

Applying these standards, we find that no rational interpretation of the evidence supports a finding of equitable estoppel. The operating agreement provides that Delaware law governs the construction of its terms and the interpretation of the rights and duties of the parties. Under Delaware law, "estoppel applies when a party by his conduct intentionally or unintentionally leads another, in reliance upon that conduct, to change position to h[er] detriment" (*Bantum v New Castle County Vo-Tech Educ. Assn.*, 21 A3d 44, 51 [Del 2011] [internal quotation marks omitted]). Thus, a party asserting an estoppel defense must show that he or she relied on the conduct of the party against whom estoppel is claimed and suffered a prejudicial change of position as a result of such reliance (*id.*).

Apollo Management points to no evidence in the record that it changed its position to its detriment as a result of Melcher's failure to protest the division of net profits. Apollo Management was a "pass through" entity that paid no taxes on its earnings and simply passed them on to its members. Thus, it could not have been harmed even if Melcher failed to protest the profit split. Moreover, at the time Melcher commenced this litigation, there were sufficient retained earnings held in Apollo Management to rectify Melcher's underpayment. Thus, Apollo Management suffered no detriment as a result of Melcher's conduct.

In addition to instructing the jury on detrimental reliance, the trial court also charged that estoppel was established when a party to a contract "puts himself in a position which cannot

be undone without substantial expense."[5] Apollo Management argues on appeal that Melcher should be estopped because Apollo Management would incur substantial expenses in paying accountants, tax preparers and lawyers to reallocate the net profits. It is difficult to understand how this could be detrimental reliance in any case. In any event, the record is devoid of proof of how much time or money Apollo Management would have to spend to calculate Melcher's proper share of the fees, and thus the evidence was insufficient to establish an estoppel. Likewise, Apollo Management's claims that there "could be" tax penalties and it "may" have to make reimbursements to members are not supported by record proof and are entirely speculative (see Benton v 673 First Realty Co., 33 AD3d 533, 535 [1st Dept 2006]). In the absence of any evidence of detrimental reliance or substantial expense, the jury's verdict on equitable estoppel should be set aside, the breach of contract claim reinstated and judgment should be entered in Melcher's favor on that cause of action.

◼ Melcher asserts a cause of action for money had and received against Fradd individually. This cause of action requires proof that "in the absence of an agreement . . . one party possesses money that in equity and good conscience [it] ought not to retain and that belongs to another" (Board of Educ. of Cold Spring Harbor Cent. School Dist. v Rettaliata, 78 NY2d 128, 138 [1991] [internal quotation marks omitted]). A cause of action for money had and received is one of quasi-contract (id.), and "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter" (Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 70 NY2d 382, 388 [1987]). Here, Melcher's claim for money had and received alleges that he was not allocated his proper share of the net profits. Since the operating agreement governs the same subject matter, Melcher's quasi-contract claim for money had and received against Fradd was properly dismissed (see id.).

Melcher argues that because he has no breach of contract claim against Fradd, he can properly assert a quasi-contact claim against him. However, Clark-Fitzpatrick did not draw that distinction, and this Court has repeatedly rejected this argument (see Randall's Is. Aquatic Leisure, LLC v City of New York, 92 AD3d 463, 464 [1st Dept 2012], lv denied 19 NY3d 804

---

5.  Melcher did not object to this charge.

[2012] ["there can be no quasi-contract claim against a third-party non-signatory to a contract that covers the subject matter of the claim"]; *Paragon Leasing, Inc. v Mezei*, 8 AD3d 54 [1st Dept 2004] [quasi-contract claim precluded by the plaintiff's written contract with a nonparty governing its right to compensation for the services that allegedly unjustly enriched the defendants]; *Bellino Schwartz Padob Adv. v Solaris Mktg. Group*, 222 AD2d 313 [1st Dept 1995] [existence of an express contract governing the subject matter of the plaintiff's claim bars quasi-contractual claims against third-party nonsignatory]; *Feigen v Advance Capital Mgt. Corp.*, 150 AD2d 281, 283 [1989], *lv dismissed and denied* 74 NY2d 874 [1989]).

Melcher is not entitled to a new trial on the cause of action alleging that he was improperly removed as a member of Apollo Management. Melcher was removed based on a provision in the operating agreement allowing Fradd to unilaterally discharge a member upon 10 days written notice. Melcher concedes that the operating agreement as signed allows for unilateral termination by Fradd, but argues that there was no meeting of the minds concerning this provision. Melcher contends that the previous draft of the contract did not allow for unilateral termination, and that Fradd had secretly inserted the provision into the finalized agreement, without Melcher's knowledge or approval, and then tricked Melcher into signing it.

In a prior appeal, we found that evidence of the earlier draft was relevant to Melcher's improper removal claim (*see* 25 AD3d 482, 483 [1st Dept 2006]). Although the trial court erred in excluding the previous draft and certain testimony about it, the error was harmless (*see Hernandez v Vavra*, 62 AD3d 616, 617 [1st Dept 2009], *lv denied* 13 NY3d 714 [2009]). Evidence about the draft was introduced through a combination of Melcher's testimony and that of Apollo Management's attorney, Jack Governale. Indeed, Governale specifically explained the difference between the draft and the final agreement.

Finally, even if the court erred by admitting certain settlement testimony by Alan Gettner, its instruction to the jury cured any prejudice (*see Messinger v Mount Sinai Med. Ctr.*, 15 AD3d 189, 190 [1st Dept 2005], *lv dismissed* 5 NY3d 820 [2005]).

Accordingly, upon remittitur from the Court of Appeals (18 NY3d 915 [2012]), the judgment of the Supreme Court, New York County (Melvin L. Schweitzer, J.), entered February 2, 2010, after a jury trial, to the extent appealed from as limited by the briefs, dismissing the causes of action for breach of

contract, improper removal, and money had and received, and bringing up for review an order, same court (Donna M. Mills, J.), entered September 8, 2009, which denied plaintiff's motion to strike defendants' pleadings and to set aside the verdict on equitable estoppel, should be reversed, on the law, without costs, the judgment vacated, the equitable estoppel verdict set aside, the cause of action for breach of contract reinstated, judgment on liability granted in favor of plaintiff on the breach of contract cause of action, and the matter remanded for an assessment of damages on that cause of action and for a hearing on plaintiff's allegations of spoliation and fraud. The appeal from the aforesaid order should be dismissed, without costs, as subsumed in the appeal from the judgment.

GONZALEZ, P.J., SWEENY and RENWICK, JJ., concur.

Judgment, Supreme Court, New York County, entered February 2, 2010, bringing up for review an order, same court, entered September 8, 2009, reversed, on the law, without costs, the judgment vacated, the equitable estoppel verdict set aside, the cause of action for breach of contract reinstated, judgment on liability granted in favor of plaintiff on the breach of contract cause of action, and the matter remanded for an assessment of damages on that cause of action and for a hearing on plaintiff's allegations of spoliation and fraud. Appeal from the aforesaid order, dismissed, without costs, as subsumed in the appeal from the judgment.